JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ALLISON MAURER, individually, and in her capacity as Power of Attorney for Alan F. McGovern, and as Executrix of the Estate of Alan F. McGovern, deceased

## DEFENDANTS

METLIFE, INC. and METROPOLITAN LIFE INSURANCE COMPANY d/b/a METLIFE

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New Castle
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Thomas A. Musi, Jr.
Musi, Malone & Daubenberger, LLP
21 W. Third Street, Media, PA 19063

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1391

Brief description of cause:
Unlawful rejection of rightly owed death benefits, Bad Faith, Breach of Contract, Violation of Insurance Practices and Consumer Protection Laws

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
449,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   4/13/16

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 114 Berry Lane, Feasterville, PA 19053

Address of Defendant: 1209 Orange Street, Wilmington, DE 19801 (Registered Agent)

Place of Accident, Incident or Transaction: Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☑  No☐

Does this case involve multidistrict litigation possibilities?   Yes☐  No☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Thomas A. Musi, Jr, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 4/13/16 _____   _____   75950
                              Attorney-at-Law      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/13/16 _____   _____   75950
                              Attorney-at-Law      Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

ALLISON MAURER, Individually,
and In her capacity as Power of
Attorney for Alan F. McGovern,
and as Executrix of the Estate of
Alan F. McGovern, deceased

METLIFE, INC. and
METROPOLITAN LIFE
INSURANCE COMPANY
V.  d/b/a METLIFE

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.  (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)  (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( ✓ )

4/13/16
**Date**

Tan
**Attorney-at-law**

Allison Maurer
**Attorney for**

610-891-8806
**Telephone**

610-891-8807
**FAX Number**

TAM@MMDLawFirm.com
**E-Mail Address**

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLISON MAURER, Individually, and** | : | |
| **in her capacity as Power of Attorney for** | : | |
| **Alan F. McGovern, and as Executrix of** | : | |
| **the Estate of Alan F. McGovern, deceased** | : | |
| **114 Berry Lane** | : | |
| **Feasterville, PA 19053** | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | **CIVIL ACTION NO.:** |
| **METLIFE, INC., and** | : | |
| **METROPOLITAN LIFE INSURANCE** | : | |
| **COMPANY d/b/a METLIFE** | : | |
| **200 Park Avenue** | : | |
| **New York City, NY 10166** | : | **COMPLAINT** |
| **Defendants.** | : | |
| | : | **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

**NOW COMES** Plaintiff Allison Maurer, Individually, and in her capacity as Power of Attorney for Alan F. McGovern, and as Executrix of the Estate of Alan F. McGovern, (hereinafter collectively referred to as "Maurer") by and through her undersigned counsel, and for her Civil Complaint against Defendants MetLife, Inc., and Metropolitan Life Insurance Company d/b/a MetLife, she states as follows:

## PARTIES

1.     Plaintiff Maurer is an adult individual and citizen of the Commonwealth of Pennsylvania, who currently resides at 114 Berry Lane, Feasterville, Pennsylvania 19053.

2.     Based upon information and belief after reasonable investigation, Defendant MetLife, Inc., is a holding company organized and existing under the laws of the State of Delaware, conducting business as "MetLife", with a principal place of business located at 200 Park Avenue, New York City, New York 10166.

3.     Based upon information and belief after reasonable investigation, Defendant Metropolitan Life Insurance Company is a wholly owned subsidiary of Defendant MetLife, Inc., organized and existing under the laws of the State of New York, conducting business as "MetLife", with a principal place of business located at 200 Park Avenue, New York City, New York 10166.

4.     It is believed, and therefore averred, that Defendant MetLife, Inc., and Defendant Metropolitan Life Insurance Company (herein "Defendants") are two separate entities, conducting business in unison and interchangeably as "MetLife".

5.     It is believed, and therefore averred, that Defendants maintain business addresses throughout the Commonwealth of Pennsylvania.

6.     It is believed, and therefore averred that Defendants are duly authorized to, and in fact are, transacting and/or conducting business in the Commonwealth of Pennsylvania and maintain business addresses within the Commonwealth.

**JURISDICTION AND VENUE**

7.     Jurisdiction in this district is founded on the diversity of the parties and the amount in controversy, which exceeds $75,000.00. Specifically, Defendant MetLife is a holding company organized under the laws of the State of Delaware, Defendant Metropolitan Life Insurance Company is a wholly owned subsidiary of Defendant

MetLife organized under the laws of the State of New York and Plaintiff Maurer is an adult individual of the Commonwealth of Pennsylvania thus creating jurisdiction.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTUAL BACKGROUND

9.     Plaintiff Maurer was the acting Agent under Power of Attorney for and engaged to be married to Alan F. McGovern, now deceased. A true and correct copy of said Power of Attorney is attached hereto and incorporated herein marked as Exhibit "A".

10.     On or about March 01, 2014, Mr. McGovern (hereinafter referred to as "Decedent") received a letter informing him that he was being placed on a personal leave of absence from his job at Lowe's Companies, Inc. (hereinafter referred to as "Employer"). A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "B".

11.     By letter dated July 25, 2014, Employer advised Decedent that his benefits would be terminated effective August 14, 2014 and further directed Decedent to continue or convert his coverage of Basic Life, Supplemental Life, Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting Defendants. A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "C".

12.     On or about August 28, 2014, Defendants' Representative Kevin Crowley (hereinafter referred to as "Rep") met with Plaintiff Maurer, whom was acting as

Decedent's Power of Attorney, and provided the necessary application paperwork (hereinafter referred to as "Application") to ensure continued coverage for Decedent and explained how to complete said Application.

13.     On or about September 4, 2014, Rep contacted Plaintiff Maurer via text messaging to determine if Plaintiff Maurer had any questions regarding the Application to which Plaintiff Maurer responded that she intended to review the Application with Decedent to discuss the amount of the policy and the payment amount.

14.     On or about September 5, 2014, Plaintiff Maurer informed Rep via text messaging that Plaintiff Maurer had completed the paperwork with policy amounts of $399,000.00 Supplemental Term Life and $50,000.00 of Life Insurance.

15.     On or about September 12, 2014, Plaintiff Maurer placed the completed Application in the mail to Rep.

16.     On or about September 14, 2014, Rep informed Plaintiff Maurer via text messaging that he was conforming the total policy amount of $449,000.00 for Decedent and shortly thereafter emailed the payment amount for the premium to Plaintiff Maurer.

17.     On or about September 15, 2014, Rep confirmed his receipt of the Application and confirmed that Plaintiff Maurer was the policy's beneficiary.

18.     On or about September 16, 2014, Rep discussed with Plaintiff Maurer the benefits of taking a direct payment out of Plaintiff Maurer's and Decedent's bank account (hereinafter referred to as "bank account") to ensure retroactive coverage.

19.     At no point did the Rep discuss with Plaintiff Maurer that a direct payment from their bank account would not entitle Decedent to any form of insurance.

20.     On or about September 19, 2014, prior to any payment having been made, Plaintiff Maurer expressed her extreme concern to Rep that Decedent receive policy coverage as soon as possible; Rep assured Plaintiff Maurer that Decedent would be entitled to immediate policy coverage once a premium payment was received.

21.     On or about September 19, 2014, a payment was withdrawn by Defendants from the bank account.

22.     By letter dated September 19, 2014, and addressed to Decedent, Defendants stated, "We drafted $503.39 on Sept 19, 2014 and applied this amount to the contract(s) below:". Thereafter the "Contract/Policy Number" is listed as 21410237. The "Payment Type" is designated as "INITIAL PREMIUM" in the amount of $503.39. A true and correct copy of said letter is attached hereto as Exhibit "D".

23.     Decedent died on September 24, 2014 with the policy in effect. A true and correct copy of the death certificate is attached hereto as Exhibit "E".

24.     By letter dated September 30, 2014, six (6) days after Decedent's death and eleven (11) days after accepting the premium tendered by Plaintiff Maurer, while Plaintiff Maurer remained in a deep state of mourning, Defendants surreptitiously attempted to cancel the policy and attached Check Number 202046220 representing "a refund due to a declination notice". A true and correct copy of said letter is attached hereto as Exhibit "F".

25.     At no point has Plaintiff Maurer deposited or in any way accepted Check Number 202046220.

26.     According to the "INITIAL PREMIUM" payment applied to the Defendants' "Contract/Policy Number" 21410237 (hereinafter referred to as "the Policy"), Plaintiff Maurer as beneficiary is entitled to a death benefit of $449,000.00.

27.     Following the death of Decedent and Defendants' alleged declination notice, Plaintiff Maurer, by and through her undersigned counsel, made a formal request by letter to Defendants on October 26, 2015, requesting that Defendants pay unto Plaintiff Maurer the death benefit owed under the Policy. A true and correct copy of said letter is attached hereto as Exhibit "G".

28.     By letter dated December 11, 2015, Defendants assigned Plaintiff Maurer's October 26, 2015 letter as "Claim No.: 21511003175" (hereinafter referred to as "Claim"). Defendants denied Plaintiff Maurer's Claim stating that Plaintiff Maurer's Policy was attached to a larger group life insurance plan created by Decedent's Employer. The letter then stated that Employer's group policy had ended on December 31, 2013, and as such "benefits are not payable **under the group policy**." (emphasis added). A true and correct copy of said letter is attached hereto as Exhibit "H".

29.     The December 11, 2015, letter further stated that Plaintiff Maurer's Policy is governed by the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA"). Defendants cited Plaintiff Maurer's rights under ERISA to appeal their decision and further stated, "Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim." See Exhibit "H".

30.     The December 11, 2015, letter advised Plaintiff Maurer that under ERISA she must appeal their decision within sixty (60) days by writing to Defendants. The letter further advised that should Plaintiff Maurer appeal, Defendants would issue a decision within sixty (60) days of receipt of said appeal. If there are "special circumstances", the letter stated, an additional sixty (60) days may be taken to issue a decision, "but only after notifying the claimant of the special circumstances in writing." See Exhibit "H".

31.     Plaintiff Maurer, by and through her undersigned counsel, promptly appealed Defendants' decision by letter dated January 15, 2016. Plaintiff Maurer, in the same appeal letter, also requested "all records and/or reports relevant to this claim." A true and correct copy of said letter is attached hereto as Exhibit "I".

32.     Defendants, by letter dated January 25, 2016, stated, "We are writing in regard to the referenced claim for **group life insurance benefits**." (emphasis added). Defendants then stated that due to "special circumstances" Defendants' decision on the claim will be further delayed. Defendants by said letter were therefore further portraying to Plaintiff Maurer that her claim fell under the guidelines of ERISA by taking benefit of the provided sixty (60) day extension to make a decision. A true and correct copy of said letter is attached hereto as Exhibit "J".

33.     Despite Defendants' promise to so provide and Plaintiff Maurer's proper request, Defendants have not provided any records or reports relevant to Plaintiff Maurer's Claim as of the date of the filing of this Complaint.

34.     By letter dated March 23, 2016, nearly sixty (60) days after Defendants' January 25, 2016, letter, Defendants did not issue a decision on Plaintiff Maurer's Claim. Instead, Defendants stated, "Please be advised that **this concern is related to an**

7

**individual policy and not group life benefits** therefore, our office has forwarded your communications to that office for review." (emphasis added). A true and correct copy of said letter is attached hereto as Exhibit "K".

**COUNT I – VIOLATION OF PENNSYLVANIA'S**
**UNFAIR INSURANCE PRACTICES ACT**

**PLAINTIFF MAURER VS. DEFENDANT METLIFE, INC., AND DEFENDANT**
**METROPOLITAN LIFE INSURANCE COMPANY D/B/A METLIFE**

35.     Plaintiff Maurer hereby incorporates by reference Paragraphs 1 to 34 of her Complaint, as if fully set forth herein.

36.     Defendants, MetLife, Inc., and Metropolitan Life Insurance Company, by and through the acts and/or omissions of their agents, servants, workmen, and/or employees, who were at all material times hereto acting within the course and scope of their employment and/or positions for Defendants, and in furtherance of Defendants' business, by the aforesaid conduct, have engaged in unfair methods of competition and/or unfair or deceptive acts or practices, as defined by the Unfair Insurance Practices Act, 40 P.S. §1171.1 *et seq.*

37.     The Defendants have failed to acknowledge and act promptly upon written and oral communications with respect to Plaintiff Maurer's Policy.

38.     The Defendants have failed to adopt and/or implement reasonable standards for the prompt investigation of claims arising under the Policy.

39.     The Defendants have refused to pay Plaintiff Maurer's Claim, without conducting a reasonable and/or timely investigation, based upon all available information and documentation.

40.    The Defendants have failed to affirm or deny coverage of Plaintiff Maurer's Claim within a reasonable time period after proof of loss and damages has been established and communicated to the Defendants and/or their agents, servants, workmen, and/or employees, who were at all material times hereto acting within the course and scope of their employment and/or positions for the Defendants.

41.    The Defendants have not attempted, in good faith, to effectuate a prompt, fair and equitable settlement of Plaintiff Maurer's Claim, in which its liability under the Policy has become reasonably clear.

42.    The Defendants left Plaintiff Maurer with no other means of recourse but to institute and/or continue to litigate to recover the amounts due to her under the Policy.

43.    The Defendants have ignored information and/or documentation in their files, and/or failed to properly analyze the information.

44.    The Defendants have failed to promptly settle and pay Plaintiff Maurer's Claim, despite liability and damages having become reasonably clear under the Policy.

45.    The Defendants have failed to promptly provide Plaintiff Maurer with a reasonable explanation of the factual and/or legal basis for the delay.

46.    The Defendants have ignored their respective fiduciary duties to Plaintiff Maurer, including, but not limited to, using actions and/or inaction in investigating and making claim determinations in a continuous, unreasonable and detrimentally scheming manner.

47.    The Defendants made a steadfast pre-determination of non-payment of Plaintiff Maurer's Claim, even after receiving concrete and irrefutable evidence in contradiction thereof.

9

48.     Throughout the administration of Plaintiff Maurer's Claim, Defendants intentionally ignored Plaintiff Maurer's reasonable efforts to fairly resolve the claim.

49.     The aforesaid conduct of Defendants, including, but not limited to, attempting to surreptitiously cancel Plaintiff Maurer's Policy, refusing to pay Plaintiff Maurer's Claim according to the terms and condition of the Policy, failing to provide all relevant documentation to the Policy and confusing and delaying Plaintiff Maurer's claim by denying and requesting additional time due to "special circumstances" under an ERISA analysis, only to later admit that the Policy at issue was an individual plan not at all governed by ERISA, constitutes unfair and/or deceptive acts and/or practices, within meaning of the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §1171.1 *et seq.*

50.     Under the aforesaid law, Plaintiff Maurer is entitled to recover an award of interest on the amount of the Claim from the date the Claim was made by Plaintiff Maurer in an amount equal to the prime rate of interest plus three per cent (3%), an award of punitive damages against the insurers, as well as court costs and attorney's fees.  See 42 Pa.C.S.A. § 8371.

51.     Plaintiff Maurer's actual damages consist of all the damages described in the preceding paragraphs of this Civil Complaint.

**WHEREFORE**, Plaintiff Maurer demands judgment against Defendant MetLife, Inc., and Defendant Metropolitan Life Insurance Company, d/b/a, MetLife in an amount in excess of **ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00)**, which includes all benefits due to Plaintiff Maurer under the subject Policy, together with interest, reasonable attorney's fees, and any other such amount the law may allow and/or which this Honorable Court deems appropriate.

10

## COUNT II – BAD FAITH

### PLAINTIFF MAURER VS. DEFENDANT METLIFE, INC., AND DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY D/B/A METLIFE

52.     Plaintiff Maurer hereby incorporates by reference Paragraphs 1 to 51 of her Complaint, as if fully set forth herein.

53.     In the Commonwealth of Pennsylvania, an insurer owes a fiduciary duty to the insured, and therefore must act with the utmost good faith and fair dealing toward that insured and in that insured's best interests at all times.

54.     Therefore, Defendants owed a duty of good faith and fair dealing to Plaintiff Maurer during the administration of her Claim.

55.     In addition to the aforementioned conduct of Defendants, their attempt to surreptitiously cancel Plaintiff Maurer's Policy, rejection of Plaintiff Maurer's Claim under ERISA, subsequent delay in issuing a decision on appeal under ERISA, and finally, their admittance that the Policy was not governed by ERISA was in bad faith and in violation of the fiduciary duty owed to Plaintiff Maurer during the administration of her Claim.

56.     The Defendants' refusal to timely pay Plaintiff Maurer's Claim within the Policy limits was the result of its negligent investigation of the underlying claim, and was unreasonable in light of the documentation provided by Plaintiff Maurer and Defendants' own documentation in their possession.

57.     There has been no reasonable basis for Defendants' denial and/or withholding of benefits under the Policy, and the resultant delay has been unwarranted and harmful to Plaintiff Maurer.

58. The Defendants had knowledge of and/or a reckless disregard for the lack of a reasonable basis for denying and/or delaying Plaintiff Maurer's Claim.

59. The Defendants' denial of Plaintiff Maurer's Claim is unreasonable and without foundation, in that Defendants:

     a. Failed to sufficiently advise Plaintiff Maurer of the reasons for denying benefits;

     b. Failed to make a good faith settlement of Plaintiff Maurer's claim;

     c. Ignored valuable information and /or documentation received, which should have led them to properly evaluate and resolve Plaintiff Maurer's claim;

     d. Unreasonably and continuously operated under an ERISA analysis of Plaintiff Maurer's Policy until the time came by which they would have to make a decision, at which point Defendants admitted their flawed analysis, knowing and ultimately conceding that ERISA was inapplicable;

     e. Had no reasonable basis to ignore and refuse to respond to the demands made by Plaintiff Maurer;

     f. Failed to timely investigate, evaluate and pay Plaintiff Maurer's claim;

     g. Failed to honor Plaintiff Maurer's Claim for payment of benefits;

     h. Failed to comply with their legal and/or contractual obligations to provide Plaintiff Maurer with full benefits per the Policy; and

60. The Defendants' conduct, as more fully described herein, constitutes a frivolous and/or unfounded refusal to provide Plaintiff Maurer her benefits due under the Policy.

61. The Defendants, by and through the acts and/or omissions of their agents, servants, workmen, and/or employees, who were at all material times hereto acting within the course and scope of their employment and/or positions, and in furtherance of the

12

Defendants' business, by the aforesaid conduct, have acted in "bad faith," in violation of 42 Pa.C.S.A. §8371.

62.     In light of Defendants' bad faith, breach of fiduciary duty and negligence, Plaintiff Maurer has the right to be compensated.

63.     Under Pennsylvania law, Plaintiff Maurer is entitled to recover an award of interest on the amount of the Policy benefits from the date the claim was made by the insured in an amount equal to the prime rate of interest plus three per cent (3%), an award of punitive damages against the insurers, as well as court costs and attorney's fees.  See 42 Pa.C.S.A. § 8371.

**WHEREFORE**, Plaintiff Maurer demands judgment against Defendant MetLife, Inc., and Defendant Metropolitan Life Insurance Company, d/b/a, MetLife in an amount in excess of **ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00)**, which includes all benefits due to Plaintiff Maurer under the subject Policy, together with interest, reasonable attorney's fees, and any other such amount the law may allow and/or which this Honorable Court deems appropriate.


**COUNT III- BREACH OF CONTRACT/BREACH OF FIDUCIARY DUTY**

**PLAINTIFF MAURER VS. DEFENDANT METLIFE, INC., AND DEFENDANT METROLITAN LIFE INSURANCE COMPANY, D/B/A METLIFE**

64.     Plaintiff Maurer hereby incorporates by reference Paragraphs 1 to 63 of her Complaint, as if fully set forth herein.

65.     Defendants provided Plaintiff Maurer with an Application for the creation of a life insurance Policy for Decedent, this constituted an offer. Plaintiff Maurer subsequently completed the Application with and on behalf of Decedent, this constituted

an acceptance. Consideration for the Policy was paid by Plaintiff Maurer unto Defendants in the amount of $503.39. Terms of the Policy were agreed by both parties to be life insurance for Decedent in the total amount of $449,000.00. At all times Plaintiff Maurer interacted with Defendants on Decedent's behalf in her capacity as Power of Attorney.

66.     Defendants never instructed Plaintiff Maurer in writing or otherwise that the payment of a premium along with a completed Application did not provide Decedent with any form of insurance; rather Defendants, by way of Rep, assured Plaintiff Maurer that a premium payment entitled Decedent to immediate policy coverage.

67.     Under Pennsylvania law, Defendants' conduct gave rise to temporary insurance for the full policy amount starting from acceptance of the premium payment until Defendants either rejected the Application because of Decedent's uninsurability or accepted the Application and issued the policy applied for. See *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579 (1978).

68.     Decedent died during the temporary insurance period, after Defendants accepted a premium payment and Application, but before Defendants either rejected or accepted the Application.

69.     Decedent's death thus satisfied all conditions precedent to the Policy benefits being paid unto Plaintiff Maurer as his named beneficiary in the full amount of $449,000.00.

70.     Although all conditions precedent to Plaintiff Maurer's recovery under the Policy and to Defendants' liability thereunder have been performed and/or have occurred,

Defendants have continued to advise Plaintiff Maurer that the Claim is under investigation and/or review, and further delay a resolution of her Claim.

71.     Defendants, without legal justification and/or cause, and in violation of their contractual duties and/or obligations under the Policy and Law have refused and continue to refuse to compensate Plaintiff Maurer.

72.     As a result of Defendants' breach of contract and/or fiduciary duties under the Policy, Plaintiff Maurer has suffered and will continue to suffer direct and consequential damages, all of which were in the contemplation of Defendants at the execution of the Policy, and at the time Defendants refused payment there under, including but not limited to, the full Policy amount and attorney's fees, all of which damages are continuing and will continue into the foreseeable future.

**WHEREFORE**, Plaintiff Maurer demands judgment against Defendant MetLife, Inc., and Defendant Metropolitan Life Insurance Company, d/b/a, MetLife in an amount in excess of **ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00)**, which includes all benefits due to Plaintiff Maurer under the subject Policy, together with interest, reasonable attorney's fees, and any other such amount the law may allow and/or which this Honorable Court deems appropriate.

### COUNT IV – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### PLAINTIFF MAURER VS. DEFENDANT METLIFE, INC., AND DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, D/B/A METLIFE

73.     Plaintiff Maurer hereby incorporates by reference Paragraphs 1 to 72 of her Complaint, as if fully set forth herein.

74.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1, *et seq.* prohibits the use of unfair or deceptive acts and practices in the conduct of any trade or commerce.

75.     Pennsylvania Unfair Trade Practices and Consumer Protection Law also provides individuals with a private right of action to recover actual damages resulting from the use of a prohibited practice in connection with a consumer's purchase or lease of goods or services for personal, family or household purposes that results in an ascertainable loss.

76.     Under the law, a "trade" or "commerce" shall mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

77.     The law prohibits any trade or commerce from engaging in any other fraudulent or deceptive conduct, which creates the likelihood of confusion or of misunderstanding.

78.     The Policy from Defendants is in place for the benefit of Decedent and Plaintiff Maurer, his named beneficiary, which has been ignored by Defendants.

79.     The aforementioned conduct of Defendants is in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1, *et seq.*

16

80.     As a result of Defendants' violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Plaintiff Maurer has suffered the aforementioned damages and losses.

**WHEREFORE**, Plaintiff Maurer demands judgment against Defendant MetLife, Inc., and Defendant Metropolitan Life Insurance Company, d/b/a, MetLife in an amount in excess of **ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00)**, which includes all benefits due to Plaintiff Maurer under the subject Policy, together with interest, reasonable attorney's fees, and any other such amount the law may allow and/or which this Honorable Court deems appropriate.

Respectfully submitted:

**MUSI, MALONE & DAUBENBERGER, L.L.P.**

BY:   _____

Thomas A. Musi, Jr., Esquire
Musi, Malone & Daubenberger, L.L.P.
21 West Third Street
Media, PA 19063
tam@mmdlawfirm.com
(610) 891-8806
*Counsel for Plaintiff*

Date: 4/13/16

# Exhibit "A"

## NOTICE

THE PURPOSE OF THIS POWER OF ATTORNEY IS TO GIVE THE PERSON YOU DESIGNATE (YOUR "AGENT") BROAD POWERS TO HANDLE YOUR PROPERTY, WHICH MAY INCLUDE POWERS TO SELL OR OTHERWISE DISPOSE OF ANY REAL OR PERSONAL PROPERTY WITHOUT ADVANCE NOTICE TO YOU OR APPROVAL BY YOU.

THIS POWER OF ATTORNEY DOES NOT IMPOSE A DUTY ON YOUR AGENT TO EXERCISE GRANTED POWERS, BUT WHEN POWERS ARE EXERCISED, YOUR AGENT MUST USE DUE CARE TO ACT FOR YOUR BENEFIT AND IN ACCORDANCE WITH THIS POWER OF ATTORNEY.

YOUR AGENT MAY EXERCISE THE POWERS GIVEN HERE THROUGHOUT YOUR LIFETIME, EVEN AFTER YOU BECOME INCAPACITATED, UNLESS YOU EXPRESSLY LIMIT THE DURATION OF THESE POWERS OR YOU REVOKE THESE POWERS OR A COURT ACTING ON YOUR BEHALF TERMINATES YOUR AGENT'S AUTHORITY.

YOUR AGENT MUST KEEP YOUR FUNDS SEPARATE FROM YOUR AGENT'S FUNDS.

A COURT CAN TAKE AWAY THE POWERS OF YOUR AGENT IF IT FINDS YOUR AGENT IS NOT ACTING PROPERLY.

THE POWERS AND DUTIES OF AN AGENT UNDER A POWER OF ATTORNEY ARE EXPLAINED MORE FULLY IN 20 PA. C.S. CH. 56.

IF THERE IS ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER OF YOUR OWN CHOOSING TO EXPLAIN IT TO YOU.

I HAVE READ OR HAD EXPLAINED TO ME THIS NOTICE AND I UNDERSTAND ITS CONTENTS.

3-28-14
DATE

_____
PRINCIPAL

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I, ALAN McGOVERN, JR., of Feasterville, Bucks County, Commonwealth of Pennsylvania, hereby revoke any general power of attorney that I have heretofore given to any person, and by these presents do constitute, make and appoint my domestic partner, ALLISON MAURER of Feasterville, Pennsylvania, my true and lawful agent.

1.    To ask, demand, sue for, recover and receive all sums of money, debts, goods, merchandise, chattels, effects and things of whatsoever nature and description which are now or hereafter shall be or become owing, due, payable, or belonging to me in or by any right whatsoever, and upon receipt thereof, to make, sign, execute and deliver such receipts, releases or other discharges, for the same, respectively, as she shall think fit.

2.    To deposit any monies which may come into her hands as such agent with any bank or bankers, either in my or her own name, and any of such money or monies to which I am entitled which now is or shall be so deposited to withdraw as she shall think fit; to sign mutual savings bank and federal savings and loan association withdrawal orders; to sign and endorse checks payable to my order and to draw, accept, make,

endorse, discount, or otherwise deal with any bills of exchange, checks, promissory notes or other commercial or mercantile instruments; to borrow any sum or sums of money on such terms and with such security as she may think fit and for that purpose to execute all notes or other instruments which may be necessary and proper; and to have access to any and all safe deposit boxes registered in my name.

3.   To sell, assign, transfer and dispose of any and all stocks, bonds (including U.S. Savings Bonds), loans, mortgages or other securities registered in my name; and to collect and receive all interest and dividends due and payable to me.

4.   To invest in my name in any stock, shares, bonds, securities or other property, real or personal, and to vary such investments as she, in her sole discretion, may deem best; and to vote at meetings of shareholders or other meetings of any corporation or company and to execute any proxies or other instruments in connection therewith.

5.   To enter into and upon my real estate, and to let, manage, and improve the same or any part thereof, and to repair or otherwise improve or alter, and to insure any buildings thereon; to sell, either at public or private sale or exchange any part or parts of my real estate or personal

property for such consideration and upon such terms as she
shall think fit, and to execute and deliver good and
sufficient deeds or other instruments for the conveyance or
transfer of the same, with such covenants of warranty or
otherwise as she shall see fit, and to give good and
effectual receipts for all or any part of the purchase price
or other consideration; and to mortgage my real estate and in
connection therewith to execute bonds and warrants and all
other necessary instruments and documents.

     6.   To contract with any person for leasing such
periods, at such rents and subject to such conditions as she
sees fit, all or any of my said real estate, to give notice
to quit to any tenant and occupiers thereof or of any part
thereof all rents, arrears of rent, and sums of money which
now are or shall hereafter become due and payable in respect
thereof; and also on non-payment thereof or of any part
thereof to take all necessary or proper means and proceedings
for determining the tenancy or occupation of such tenants or
occupiers, and for ejecting the tenants or occupiers and
recovering the possession thereof.

     7.   To commence, prosecute, discontinue or defend all
actions or other legal proceedings pertaining to me or my
estate or any part thereof, to settle, compromise, or submit

to arbitration any debt, demand or other right of matter due me or concerning my estate as she, in her sole discretion, shall deem best and for such purpose to execute and deliver such releases, discharges or other instruments as she may deem necessary and advisable; and to satisfy mortgages, including the execution of a good and sufficient release, or other discharge of such mortgage.

8.   To execute, acknowledge and file all federal, state and local tax returns of every kind and nature, including without limitation, income, gift and property tax returns.

9.   To engage, employ, and dismiss any agents, clerks, servants or other persons as she, in her sole discretion, shall deem necessary and advisable.

10.   In general, to do all acts, deeds and matters whatsoever in or about my estate, property and affairs as fully and effectually to all intents and purposes as I could do in my own proper person if personally present, giving to my said Agent power to make and substitute under them an agent or agents for all the purposes herein described, hereby ratifying and confirming all that the said Agent or substitute or substitutes shall do therein by virtue of these presents.

Page 5 of  11

11.   In addition to the powers and discretion herein
specially given and conferred upon my Agent, and
notwithstanding any usage or custom to the contrary, to have
the full power, right and authority to do, perform and to
cause to be done and performed all such acts, deeds, matters
in connection with my property and estate as she, in her sole
discretion, shall deem reasonable, necessary and proper, as
fully, effectually and absolutely as if she were the absolute
owner and possessor thereof.

12.   In addition to the powers and discretion
hereinbefore given and conferred upon my Agent, I hereby
empower my Agent to do any or all of the following, as
defined by § 5603 of the Probate, Estates and Fiduciaries
Code:

(1)   To make limited gifts.

(2)   To create a trust for my benefit.

(3)   To make additions to an existing trust for my
benefit.

(4)   To claim an elective share of the estate of my
deceased spouse.

(5)   To disclaim any interest in property.

(6)   To renounce fiduciary positions.

(7)   To withdraw and receive the income or corpus of a

trust.

(8)   To authorize my admission to a medical, nursing, residential or similar facility and to enter into agreements for my care.

(9)   To authorize medical and surgical procedures.

13.   It is my intention that this Power of Attorney shall take effect only and is contingent upon my becoming incapacitated, either physically, mentally or both, and therefore unable to give proper attention to my personal affairs. Any third party shall rely upon the written declaration of my attending physician that such contingency has occurred.

14.   It is my specific intention that this Power of Attorney shall be in force and continue in force despite any subsequent physical or mental incapacity on my part and shall terminate only upon my death.

15.   In the event that following the execution of this power of attorney I am adjudicated an incapacitated person, then I nominate my domestic partner, Allison Maurer, to serve as the guardian of my estate and of my person. Upon the death, resignation or inability of Allison Maurer to serve or to continue to serve in either or all of the aforesaid fiduciary capacities (guardian of my estate or of my person

Page 7 of 11

or agent), then such fiduciary position shall be filled by my
mother, Janice Stinson.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal
this    28    day of March        ,2014.

                              _____
                              ALAN McGOVERN, JR.


_____
WITNESS

                              346 N Mt Vernon Circle
                              ADDRESS    Bensalem PA 19020


_____
WITNESS

                              346 N. Mt. Lemon Cir
                              ADDRESS    Bensalem PA 19020


Page 8 of 11

<u>ACKNOWLEDGMENT</u>

I, ALLISON MAURER, HAVE READ THE ATTACHED POWER OF ATTORNEY AND AM THE PERSON IDENTIFIED AS THE AGENT FOR THE PRINCIPAL. I HEREBY ACKNOWLEDGE THAT IN THE ABSENCE OF A SPECIFIC PROVISION TO THE CONTRARY IN THE POWER OF ATTORNEY OR IN 20 PA. C.S. WHEN I ACT AS AGENT:

I SHALL EXERCISE THE POWERS FOR THE BENEFIT OF THE PRINCIPAL.

I SHALL KEEP THE ASSETS OF THE PRINCIPAL SEPARATE FROM MY ASSETS.

I SHALL EXERCISE REASONABLE CAUTION AND PRUDENCE.

I SHALL KEEP A FULL AND ACCURATE RECORD OF ALL ACTIONS, RECEIPTS AND DISBURSEMENTS ON BEHALF OF THE PRINCIPAL.

_3/28/14_
DATE

_Allison Maurer_
AGENT

_Susan P. Hanson_
WITNESS

_Karyn _____
WITNESS

SWORN TO AND SUBSCRIBED BEFORE ME THIS 28th DAY OF March , 2014 .

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Debralee A. Clayton, Notary Public
Bensalem Twp, Bucks County
My commission expires August 09, 2017

Page 9 of 11

## AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA:

SS:

COUNTY OF BUCKS            :

We, _Susan P. Harrison_ and _Raymond Harrison_
the witnesses whose names are signed to the attached or
foregoing instrument, being duly qualified according to law,
do depose and say that we were present and saw Alan McGovern,
Jr., sign and execute the instrument as his Power of
Attorney; that he signed willingly and that he executed it as
his free and voluntary act for the purposes therein
expressed; that each of us in the hearing and presence of
Alan McGovern, Jr. when he signed the Power of Attorney as
witnesses; and that to the best of our knowledge, Alan
McGovern, Jr., was at that time 18 or more years of age, of
sound mind and under no constraint or undue influence.

Sworn or Affirmed to and Subscribed to before me by
_Susan P. Harrison_ and _Raymond Harrison_,
witnesses, this   28th day of March      , 2014 .


_Susan P. Harrison_
WITNESS


_Raymond Harrison_
WITNESS


_Alan McGovern Jr_
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Debralee A. Clayton, Notary Public
Bensalem Twp, Bucks County
My commission expires August 09, 2017

Page 10 of 11

AM

### ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA:

                                      SS:

COUNTY OF *Bucks*            :

    I, ALAN McGOVERN, JR. whose name is signed to the attached or foregoing instrument, having been duly qualified according to law, do hereby acknowledge that I signed and executed the instrument as my Power of Attorney, that I signed it willingly; and that I signed it as my free and voluntary act for the purposes therein expressed.

 

 

                                                ————————————————
                                              ALAN McGOVERN, JR.

      Sworn or Affirmed to and Acknowledged before me by Alan McGovern, Jr., this 28th day of March , 2014.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Debralee A. Clayton, Notary Public
Bensalem Twp, Bucks County
My commission expires August 09, 2017

                                    NOTARY PUBLIC

Page 11 of 11

Exhibit "B"



March 01, 2014

Location:          4980
Hire Date:         03-17-2008
Position:          Account Exec ProServices
Emp Class:         Full/Reg
Sales ID:          001264318

Alan McGovern
114 Berry Lane

Trevose, PA 19053

Dear Alan,

You have been placed on a personal leave of absence from your job at Lowe's effective   02-15-2014. During the period of your approved leave, you must maintain regular contact with your supervisor, at least bi-weekly. Failure to maintain contact or to return at the end of the approved leave may result in termination of employment. In certain situations, additional leave may be requested. If you request an extension of an approved leave, you must provide appropriate justification for the leave request; however, the normal maximum period of leave is 365 days, absent an accommodation for a qualifying condition. Besides requesting an extension of your leave, other accommodations may include (but are not limited to) modifications to assist you to perform your job duties or reassignment to an open and available position. If you have a qualifying condition, you may request an ADA accommodation at any time during your leave of absence by contacting HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. At the end of your approved leave of absence, Lowe's will consider you for return to work; however, Lowe's does not guarantee that it will be able to re-employ you in the position you held prior to your leave. You may apply for any open position for which you are qualified, either at the location in which you previously worked or at another Lowe's location.

Your insured benefits will automatically be continued during any period of leave, unless you elect otherwise. The maximum period you may continue Lowe's group insurance benefits during any absence is 180 days. You will be required to pay your portion of all group insurance premiums (health, dental, vision, life, disability and Health FSA), if any, that you continue during your leave of absence. You will be billed for each bi-weekly pay period at your home address for your portion of the group insurance premiums by Lowe's vendor Key Benefit Administrators (KBA). If payment is not made timely to KBA, your group insurance benefits will be cancelled. You will be notified in writing in advance of the termination of benefits. Please note, that you will not be eligible for continuation of coverage through COBRA if your benefits are terminated for non-payment of premiums. If you do not receive a statement from KBA within four weeks, call KBA at 1-888-309-8232. If you are participating in the auto/home insurance or long-term care insurance plan options, contact MetLife at 1-800-438-6388 to arrange for payment of your premiums while on leave. If you have questions concerning continuation of benefits while on leave, contact your Location HR Manager/Coach, CSC Departmental Manager or Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535.

If you are a part time employee enrolled in the Limited Benefit Health Plan, you are still responsible for the premium payments if you want your coverage to remain in force. For all options you still need to pay premiums directly to Allstate Workplace Division to avoid a lapse in coverage.  You can contact Allstate Workplace Division at 1-866-510-5839.

If you do not wish to continue insured benefits while on a leave of absence, complete the cancellation request attached, and return it to the address noted within 31 days of the start of your leave. Please note that by cancelling any one of the group insurance options, your enrollment, if any, in the life insurance, personal accident insurance, long-term disability, prepaid legal, auto/home insurance, and long-term care insurance plan options will also end. You will have the option to re-enroll in these plan options if you return to active

status from leave within 365 days of the start of your leave. However, please note that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

Your participation in the dependent care flexible spending account, if any, will be automatically suspended as of the start of your leave of absence. Upon return to active status you may restart your dependent care FSA by contacting Wage Works, the plan administrator at 1-877-924-3967, or by visiting myloweslife.com.

While on leave, your employee discount card will be in effect for a maximum of 90 days.

A leave of absence of any kind will not be counted towards bonus eligibility under any of the company's incentive programs. Incentives and bonus payments are prorated for the number of days in active status while in a bonus eligible position. Please consult the applicable incentive program document for further information.

For more comprehensive information on benefits while on leave, please refer to the summary plan description located in "Foundations for Success" available on myloweslife.com or review Lowe's Personal Leave policy. If you have any questions about your benefits, contact Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. If you have any questions about your return from leave, contact your HR Manager/Coach or CSC Departmental Manager.

Sincerely,

Lowe's Group Benefits Department

COMPLETE AND MAIL THIS SECTION ONLY IF YOU WISH TO CANCEL INSURED BENEFIT COVERAGES.

I do not wish to continue any insurance benefits beyond my last day worked. I understand that I will have the option of re-enrolling in these plan options if I return to active status from leave within 365 days of the start of my leave and I reapply within 31 days of returning to work. I further understand that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

To cancel benefits, the postmark date must be within 31 days of the start of the leave. The effective date of cancellation will be the postmark date of the correspondence containing the cancellation form.

_____          _____
Printed Name                             Sales ID Number

_____          _____
Location Number          Date            Signature

Return To: Lowe's HR Shared Services, Mail Code PRN2
          1605 Curtis Bridge Rd.
          Wilkesboro, NC  28697                              F1-Personal

Note: Employees who have not returned to work after 365 days of absence are subject to termination absent an accommodation for a qualifying condition.

# Exhibit "C"



July 25, 2014

Location:    1980

Alan Francis McGovern
114 Berry Lane
Trevose, PA 19053

Dear Alan,

## WARNING LETTER

The maximum duration of Lowe's benefits continuation during an approved absence is 180 days which is counted from your first day of absence. Your benefits will be terminated effective 08/14/2014 unless you return to work prior to this date.

After the exhaustion of the 180 day period, you can continue your Group Medical, Dental, and Vision Options coverage, and participation in the Health Flexible Spending Account through COBRA. You will receive a COBRA packet in the mail at your home address or you can contact Key Benefit Administrators at 888-309-8232.

You can also continue or convert your coverage under the Basic Life, Supplemental Life Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting Metlife at 800-438-6388.

If you return from a leave of absence after 180 days, you will not be able to enroll for benefits until the next annual enrollment period, with such enrollment being effective January 1 of the next following plan year.

Please direct questions regarding this notice to your location's HR Manager/Coach or CSC Representative. You may also call HR Shared Services at 1-888-HRINFO5 (474-6365).

Sincerely,
Lowe's Benefits Department

# Exhibit "D"

P.O. Box 350078
Warwick, RI 02887-0354



September 19, 2014

ALAN F MCGOVERN
114 BERRY LANE
FEASTERVILLE, PA 19053

RE: Electronic Payment (EP) Number 50001507604

**Special Draft**

We drafted $503.39 on Sept 19, 2014 and applied this amount to the contract(s) below:

| Legal Company Name | Contract/Policy Number | Payment Type | Amount |
|---|---|---|---|
| Metropolitan Life Insurance Company | 214102327 | INITIAL PREMIUM | $503.39 |

If your address has changed, please complete the "Change of Address" section on the lower portion of this letter and return it to the above address.

If you have any questions about the agreement, please contact your representative or call our automated directory at 1-800-638-5433 Monday through Friday between 9 a.m. and 6 p.m., ET.

Sincerely,

Koshier Miller

Koshier Miller
Remittance Reconciliation Unit

---

If you intend to close your bank account, please leave enough funds to cover payment for one month and inform us so the appropriate changes can be made to your account.

Detach                                                                                                          Detach

## Change of Address

Please print your new address below and return this portion to the address above.
EP Number: 50001507604

ALAN F MCGOVERN
Bank Account Owner's Name

| Street | City | State | Zip code |
|---|---|---|---|

Note: Changes to bank information requires a new EP Account Agreement form.

# Exhibit "E"

Reg. Dist. No. _____ Primary Reg. Dist. No. 3101

Registrar's No. 201400 2960

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF HEALTH — VITAL STATISTICS
**CERTIFICATE OF DEATH**
Type or print in permanent blue or black ink

State File No. 2014083065

| 1. Decedent's Legal Name (Include AKA's if any) (First, Middle, LAST, suffix) ALAN FRANCIS MCGOVERN JR | 2. Sex Male | 3. Date of Death (Mo/Day/Year) September 24, 2014 |
|---|---|---|

| 4. Social Security Number | 5a. Age (Years) 30 | 5b. Under 1 Year Months / Days | 5c. Under 1 Day Hours / Minutes | 6. Date of Birth (Mo/Day/Year) July 13, 1984 | 7. Birthplace (City and State or Foreign Country) BRISTOL, PENNSYLVANIA |
|---|---|---|---|---|---|

| 8a. Residence State PENNSYLVANIA | 8b. County BUCKS | 8c. City or Town Feasterville |
|---|---|---|

| 8d. Street and Number 114 Berry Lane | 8e. Apt. No. | 8f. Zipcode 19053 | 8g. Inside City Limits? No |
|---|---|---|---|

| 9. Ever in US Armed Forces? No | 10. Marital Status at Time of Death Never Married | 11. Surviving Spouse's Name (If wife, give name prior to first marriage) |
|---|---|---|

| 12. Decedent's Education COLLEGE, BUT NO DEGREE | 13. Decedent of Hispanic Origin No | 14. Decedent's Race White |
|---|---|---|

| 15. Father's Name ALAN FRANCIS MCGOVERN SR | 16. Mother's Name (prior to first marriage) JANICE ELLEN STINSON |
|---|---|

| 17a. Informant's Name ALLISON MARIE MAURER | 17b. Relationship to Decedent Fiancee | 17c. Mailing Address (Street and Number, City, State, Zip Code) 114 Berry Lane Feasterville, PENNSYLVANIA 19053 |
|---|---|---|

| 18a. Place of Death Hospital - Inpatient | 18b. City or Town, State and Zip code CINCINNATI, OH 45229 | 18c. County of Death HAMILTON |
|---|---|---|

| 18b. Facility Name (If not institution, give street & number) CHILDREN'S HOSPITAL MEDICAL CENTER |
|---|

| 19. Signature of Funeral Service Licensee or Other Agent | 20. License Number (of licensee) 009390 | 21. Name and Complete Address of Funeral Facility MCCALL FUNERAL HOME |
|---|---|---|

| 22a. Method of Disposition Cremation | 22b. Date of Disposition October 30, 2014 | 3800 READING RD CINCINNATI, OH 45229 |
|---|---|---|

| 22c. Place of Disposition (Name of Cemetery, Crematory, or other place) Cincinnati Cremation Co. | 22d. Location (City/Town and State) CINCINNATI, OH |
|---|---|

| 23. Registrar's Signature Camilla Jones MD JONES, CAMILLE | 24. Date Filed SEP 2 6 2014 |
|---|---|

| 25a. Name of Person Issuing Burial Permit | 25b. District No. .3101 | 25c. Date Burial Permit Issued SEP 2 6 2014 |
|---|---|---|

| 26a. Certifier (Check only one) [X] Certifying Physician To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated. [ ] Coroner On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated. | | |
|---|---|---|

| 26b. Time of Death 1433 | 26c. Date Pronounced Dead (Mo/Day/Year) 9/24/14 | 26d. Was case referred to coroner? Yes |
|---|---|---|

| 26e. Signature and Title of Certifier | 26f. License number 35.121415 | 26g. Date Signed 9/26/14 |
|---|---|---|

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death
LAURA ANN KITZMILLER, 3333 Burnet Avenue CINCINNATI, OH 45229

| 28. Part I. Enter the disease, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink. | Approximate Interval Between Onset and Death |
|---|---|
| Immediate Cause (Final disease or condition resulting in death) a. septic shock | |
| Sequentially list conditions, if any, leading to immediate cause. b. Due to (or as a consequence of) fungal infection | |
| c. Due to (or as a consequence of) bone marrow transplant | |
| Enter Underlying Cause (Disease or injury that initiated events resulting in death) d. Due to (or as a consequence of) Wiskott-Aldrich | |

| Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 29a. Was An Autopsy Performed? [X] Yes [ ] No | 29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death? [ ] Yes [ ] No [ ] Not Applicable |
|---|---|---|

| 30. Did Tobacco Use Contribute to Death? [ ] Yes [ ] Unknown [X] No [ ] Probably | 31. If Female, Pregnancy Status [ ] Not pregnant within past year [ ] Pregnant at time of death [ ] Not pregnant, but pregnant within 42 days of death [ ] Not pregnant, but pregnant 43 days to 1 year before death [ ] Unknown if pregnant within the past year | 32. Manner of Death [X] Natural [ ] Accident [ ] Suicide | [ ] Homicide [ ] Pending Investigation [ ] Could not be determined |
|---|---|---|---|

| 33a. Date of Injury (Mo/Day/Year) | 33b. Time of Injury | 33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area) | 33d. Injury at Work? [ ] Yes [ ] No |
|---|---|---|---|

| 33e. Location of Injury (Street and Number and Rural Route Number, City or Town, State) | | |
|---|---|---|

| 33f. Describe How Injury Occurred | 33g. If Transportation Injury, Specify: [ ] Driver/Operator [ ] Pedestrian [ ] Passenger [ ] Other: |
|---|---|

HEA 2724 Rev. 01/07

I HEREBY CERTIFY THIS DOCUMENT IS A TRUE EXACT COPY OF THE RECORD ON FILE WITH THE OHIO DEPARTMENT OF HEALTH.

SP 26 14 035162

# Exhibit "F"

**MetLife**

P O BOX 30074
TAMPA  FL 33630-3074

MCGOVERN ALAN
114 BERRY LANE
FEASTERVILLE PA 19053

THE ATTACHED CHECK REPRESENTS A REFUND DUE TO A DECLINATION NOTICE.

SEP 3 0 2014

---

Detach stub before cashing

**MetLife**®

O  BOX 30074
MPA  FL 33630-3074

ty to the Order of

GOVERN, ALAN
4 BERRY LANE
ASTERVILLE PA 19053

Morgan Chase Bank, N.A.
40 Tarbell Road
racuse NY 13206

Metropolitan Life Insurance Company  BO-937/213

| Type of Payment | | Check Number |
|---|---|---|
| REFUND-D | | **202046220** |

300
OFFICE   AGENCY          0014279853
56H      023

20500001

Not Valid Before
09/26/2014

Amount
Dollars   Cents
$****503*39

N. Debel
AUTHORIZED SIGNATURE

# Exhibit "G"



THOMAS A. MUSI, JR.
WILLIAM E. MALONE, JR.
RICHARD C. DAUBENBERGER
STEVEN M. PACILIO
C. CURTIS NORCINI
LUCAS A. CLARK, IV
CHRISTOPHER M. BROWN
DENNIS C. COYNE
RACHEL L. MYERS
ANDREW M. PATRICK

October 26, 2015

*VIA FIRST CLASS MAIL*

Metropolitan Life Insurance Company      MetLife
200 Park Ave.      P.O. Box 20074
New York, NY 10166      Tampa, FL 33630-3074

MetLife
P.O. Box 354 00795
Warwick, RI 02887-0354

             RE:    **Life Insurance of Alan F. McGovern, Deceased**
                     **D.O.D. Sept. 24, 2014**
                     **MetLife Contract/Policy Number 214102327**

Dear MetLife:

This office represents Allison Maurer, individually and as Executrix of the Estate of Alan F. McGovern, deceased ("Decedent"). Enclosed is a copy of Mr. McGovern's death certificate for your reference. We are requesting that the death benefit of the above-referenced contract/policy number be remitted to Allison Maurer whom we understand to be the beneficiary of said policy based upon the following:

1.      Decedent was placed on personal leave of absence from his job at Lowe's ("Employer") effective February 25, 2014. A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "A."

2.      By letter dated July 25, 2014, Employer advised Decedent that his benefits would be terminated effective August 14, 2014 and further directed Decedent to continue or convert his coverage of Basic Life, Supplemental Life Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting MetLife. A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "B."

3.      On or about August 28, 2014, MetLife Financial Services Representative Kevin Crowley ("MetLife Rep") met with the Decedent's agent under power of attorney/fiancé, Allison Maurer ("Agent") and provided Agent the necessary paperwork and explained how to complete said paperwork.

4.      On or about September 4, 2014, MetLife Rep contacted Agent via text messaging to determine if Agent had any questions regarding the paperwork to which Agent responded she

**MUSI, MALONE & DAUBENBERGER, LLP**
ATTORNEYS AT LAW
21 WEST THIRD STREET, MEDIA, PA 19063 · P: 610.891.8806 · F: 610.891.8807
1735 MARKET STREET, SUITE A-534, PHILADELPHIA, PA 19103 · P: 215.940.8806 · F: 215-940-2837
310 NORTH HIGH STREET, WEST CHESTER, PA 19380 · P: 610.692.8806 · F: 610-692-3515
WWW.MMDLAWFIRM.COM

intended to review the paperwork with Decedent to discuss the amount of the policy and the payment amount.

5.      On or about September 5, 2014, via text message Agent informed MetLife Rep that she had completed the paperwork and informed MetLife Rep that the policy was for $399,000.00 Supplemental Term Life and $50,000.00 of Life insurance, to which MetLife Rep requested the paperwork be sent to his personal residence for review before submission to ensure that everything was filled out correctly.

6.   ·   On or about September 12, 2014, via text message MetLife Rep asked Agent whether the paperwork was mailed yet, also stating "just want to make sure there are no deadlines to get the coverage," to which Agent responded the paperwork should be in the mail.

7.      On or about September 14, 2014, via text message MetLife Rep indicated to Agent that he was running the numbers for Decedent for $449,000.00 and needed Decedent's date of birth again.  Shortly thereafter MetLife Rep emailed the payment amount to Agent and Agent told MetLife Rep she needed to see if she could afford a lump sum or if she was only able to afford monthly payments of the premium.

8.      On or about September 15, 2014, via text message MetLife Rep confirmed he received the application in the mail but he needed the following: "Couple things, Going to need a copy of the POA (email me if you can).  Also need to put something down for his net worth (just something more than 0).  I was going to put you down as the beneficiary – is that correct? If so send me your DOB.  Last thing, I need to get my hands of the letter Lowes sent to Alan about the life insurance offer.  I tried to get my hands on this, but was told only get from Lowes.  Sorry for the long email…"

Agent replied via text message:

"I might need your assistance to figure out his net worth since almost everything is in my name but a car we share and a truck he has been working that really doesn't have a cash value.  He isn't working but gets a check every month for long term and I Wil be filing for ss this week.  And any saving is in both out names that I will be using to pay for the policy.

I have the original with me so.  I will see if I can get it sent to you some how.  Does it have to be a scanned document?

Yes I am the beneficiary.  Allison Marie Maurer My DOB is 7 6 1982

I can forward you the email.  That was sent to me from the area HR about the benefits.  Would that work?"

To which MetLife Rep replied – "Ok., for net worth I'll put down 10k (need to put something down).  For the POA, if easier to fax then send to 610 832 3791.  Not sure about the email, but send it to me and I'll see if they will take."

9.     On or about September 16, 2014, MetLife Rep via text message asked Agent. "Do you think emailing or faxing POA? Just want to make sure I get… I was going to send in Alan's Application today. Thanks".

10.     Agent responded by informing MetLife Rep that she was going to talk to Decedent's Social Worker today to assist her with getting the POA sent over to him that day. Agent also expressed her concern that she felt his net worth was rather high at $10k and more likely Decedent was possibly even negative.

11.     MetLife Rep stated "It's OK – not going to ask for any proof of this…" Agent responded that this was his [MetLife Rep's] world so she trusts him with what needs to be filled out involving the net worth on the application.

12.     MetLife Rep later that day via text indicated that he was "Submitting everything now, any chance in forward me the email from HR?" Agent was able to forward the email within approximately 15 minutes and asked MetLife Rep if there was anything else that was needed.

13.     MetLife Rep replied "The only thing I can think of is the separation letter from MetLife thru Lowes – trying to get around with the email. If you have a minute, give me a call."

14.     Thereafter MetLife Rep and Agent discussed taking a direct payment out of their bank account to ensure that they have coverage retroactive, said payment was withdrawn by MetLife and applied to contract 214102327. A true and correct copy the confirmation letter from MetLife dated September 19, 2014 is attached hereto and incorporated herein marked as Exhibit "C."

15.     Payment cleared out of Agent's personal checking account on September 19, 2014.

16.     Decedent died on September 24, 2014 with the policy in effect. A true and correct copy of the death certificate is attached hereto and incorporated herein marked as Exhibit "D."

17.     By letter dated September 30, 2014, six (6) days after decedent's death and eleven (11) days after accepting the premium tendered by Agent, MetLife cancelled the policy and attached Check Number 202046220 representing "a refund due to a declination notice". Said check was not accepted by Agent. A true and correct copy of said check is attached hereto and incorporated herein marked as Exhibit "E." A copy of decedent's death certificate and short certificate are also attached as Exhibits "F" and "G", respectively.

The submission of the completed application and the subsequent clearing of payment to MetLife for the premium constitutes an offer, acceptance and consideration giving rise to a contract between Decedent and MetLife. Thus we are requesting the death benefit of $449,000.00 of the above-referenced policy be remitted to the designated beneficiary or, in the absence thereof, to the Estate of Alan McGovern. Kindly do so within the next twenty (20) days or we will seek compulsion through the courts plus all additional relief as the court deems fit.

Thank you for your kind attention to the above.

Very truly yours,

Thomas A. Musi, Jr.

TAM/CMB/enf
Enclosures
cc:  Christopher M. Brown

# EXHIBIT "A"



March 01, 2014

Location:        1980
Hire Date:       03-17-2008
Position:        Account Exec ProServices
Emp Class:       Full/Reg
Sales ID:        001264518

Alan McGovern
114 Berry Lane

Trevose, PA 19053

Dear Alan,

You have been placed on a personal leave of absence from your job at Lowe's effective 02-15-2014. During the period of your approved leave, you must maintain regular contact with your supervisor, at least bi-weekly. Failure to maintain contact or to return at the end of the approved leave may result in termination of employment. In certain situations, additional leave may be requested. If you request an extension of an approved leave, you must provide appropriate justification for the leave request; however, the normal maximum period of leave is 365 days, absent an accommodation for a qualifying condition. Besides requesting an extension of your leave, other accommodations may include (but are not limited to) modifications to assist you to perform your job duties or reassignment to an open and available position. If you have a qualifying condition, you may request an ADA accommodation at any time during your leave of absence by contacting HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. At the end of your approved leave of absence, Lowe's will consider you for return to work; however, Lowe's does not guarantee that it will be able to re-employ you in the position you held prior to your leave. You may apply for any open position for which you are qualified, either at the location in which you previously worked or at another Lowe's location.

Your insured benefits will automatically be continued during any period of leave unless you elect otherwise. The maximum period you may continue Lowe's group insurance benefits during any absence is 180 days. You will be required to pay your portion of all group insurance premiums (health, dental, vision, life, disability and Health FSA), if any, that you continue during your leave of absence. You will be billed for each bi-weekly pay period at your home address for your portion of the group insurance premiums by Lowe's vendor Key Benefit Administrators (KBA). If payment is not made timely to KBA, your group insurance benefits will be cancelled. You will be notified in writing in advance of the termination of benefits. Please note that you will not be eligible for continuation of coverage through COBRA if your benefits are terminated for non-payment of premiums. If you do not receive a statement from KBA within four weeks, call KBA at 1-888-309-8232. If you are participating in the auto/home insurance or long-term care insurance plan options, contact MetLife at 1-800-438-6388 to arrange for payment of your premiums while on leave. If you have questions concerning continuation of benefits while on leave, contact your Location HR Manager/Coach, CSC Departmental Manager or Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535.

If you are a part-time employee enrolled in the Limited Benefit Health Plan, you are still responsible for the premium payments if you want your coverage to remain in force. For all options you still need to pay premiums directly to Allstate Workplace Division to avoid a lapse in coverage. You can contact Allstate Workplace Division at 1-866-510-5859.

If you do not wish to continue insured benefits while on a leave of absence, complete the cancellation request attached, and return it to the address noted within 31 days of the start of your leave. Please note that by cancelling any one of the group insurance options, your enrollment, if any, in the life insurance, personal accident insurance, long-term disability, pre-paid legal, auto/home insurance, and long-term care insurance plan options will also end. You will have the option to re-enroll in these plan options if you return to active

status from leave within 365 days of the start of your leave. However, please note that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

Your participation in the dependent care flexible spending account, if any, will be automatically suspended as of the start of your leave of absence. Upon return to active status you may restart your dependent care FSA by contacting Wage Works, the plan administrator at 1-877-924-3967, or by visiting myloweslife.com.

While on leave, your employee discount card will be in effect for a maximum of 90 days.

A leave of absence of any kind will not be counted towards bonus eligibility under any of the company's incentive programs. Incentives and bonus payments are prorated for the number of days in active status while in a bonus eligible position. Please consult the applicable incentive program document for further information.

For more comprehensive information on benefits while on leave, please refer to the summary plan description located in "Foundations for Success" available on myloweslife.com or review Lowe's Personal Leave policy. If you have any questions about your benefits, contact Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. If you have any questions about your return from leave, contact your HR Manager/Coach or CSC Departmental Manager.

Sincerely,

Lowe's Group Benefits Department

---

COMPLETE AND MAIL THIS SECTION ONLY IF YOU WISH TO CANCEL INSURED BENEFIT COVERAGES.

I do not wish to continue any insurance benefits beyond my last day worked. I understand that I will have the option of re-enrolling in these plan options if I return to active status from leave within 365 days of the start of my leave and I reapply within 31 days of returning to work. I further understand that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

To cancel benefits, the postmark date must be within 31 days of the start of the leave. The effective date of cancellation will be the postmark date of the correspondence containing the cancellation form.

_____                    _____
Printed Name                                        Sales ID Number

_____   _____    _____
Location Number                   Date              Signature

Return to: Lowe's HR Shared Services, Mail Code PRN2
           1605 Curtis Bridge Rd.
           Wilkesboro, NC  28697                                      F1-Personal

Note: Employees who have not returned to work after 365 days of absence are subject to termination absent an accommodation for a qualifying condition.

# EXHIBIT "B"



July 25, 2014

Location:    1980

Alan Francis McGovern
114 Berry Lane
Trevose, PA 19053

Dear Alan,

## WARNING LETTER

The maximum duration of Lowe's benefits continuation during an approved absence is 180 days which is counted from your first day of absence. Your benefits will be terminated effective 08/14/2014 unless you return to work prior to this date.

After the exhaustion of the 180 day period, you can continue your Group Medical, Dental, and Vision Options coverage, and participation in the Health Flexible Spending Account through COBRA. You will receive a COBRA packet in the mail at your home address or you can contact Key Benefit Administrators at 888-309-8232.

You can also continue or convert your coverage under the Basic Life, Supplemental Life, Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting Metlife at 800-438-6388.

If you return from a leave of absence after 180 days, you will not be able to enroll for benefits until the next annual enrollment period, with such enrollment being effective January 1 of the next following plan year.

Please direct questions regarding this notice to your location's HR Manager/Coach or CSC Representative. You may also call HR Shared Services at 1-888-HRINFO5 (474-6365).

Sincerely,
Lowe's Benefits Department

# EXHIBIT "C"

Metropolitan Life Insurance Company
P.O. Box 354     00795
Warwick, RI 02887-0354



September 19, 2014

ALAN F MCGOVERN
114 BERRY LANE
FEASTERVILLE, PA 19053

RE: Electronic Payment (EP) Number 50001507604

**Special Draft**

We drafted $503.39 on Sept 19, 2014 and applied this amount to the contract(s) below:

| Legal Company Name | Contract/Policy Number | Payment Type | Amount |
|---|---|---|---|
| Metropolitan Life Insurance Company | 214102327 | INITIAL PREMIUM | $503.39 |

If your address has changed, please complete the "Change of Address" section on the lower portion of this letter and return it to the above address.

If you have any questions about the agreement, please contact your representative or call our automated directory at 1-800-638-5433 Monday through Friday between 9 a.m. and 6 p.m., ET.

Sincerely,

*Koshier Miller*

Koshier Miller
Remittance Reconciliation Unit

If you intend to close your bank account, please leave enough funds to cover payment for one month and inform us so the appropriate changes can be made to your account.

Detach ------------------------------------------------------------------ Detach

## Change of Address

Please print your new address below and return this portion to the address above.
EP Number: 50001507604

ALAN F MCGOVERN
Bank Account Owner's Name

| Street | City | State | Zip code |
|---|---|---|---|

Note: Changes to bank information requires a new EP Account Agreement form.

# EXHIBIT "D"

Reg. Dist. No. 31

Primary Reg. Dist. No. 3101

Registrar's No. 201400 2960

Ohio Department of Health
VITAL STATISTICS
CERTIFICATE OF DEATH
Type or print in permanent blue or black ink

State File No. 2014083065

**DECEDENT**

1. Decedent's Legal Name (Include AKA's if any) (First, Middle, LAST, suffix)
ALAN FRANCIS MCGOVERN JR

2. Sex
Male

3. Date of Death (Mo/Day/Year)
September 24, 2014

4. Social Security Number

5a. Age (Years) 30

5b. Under 1 Year Months / Days

5c. Under 1 day Hours / Minutes

6. Date of Birth (Mo/Day/Year)
July 13, 1984

7. Birthplace (City and State or Foreign Country)
BRISTOL, PENNSYLVANIA

8a. Residence State
PENNSYLVANIA

8b. County
BUCKS

8c. City or Town
Feasterville

8d. Street and Number
114 Berry Lane

8e. Apt. No.

8f. Zipcode
19053

8g. Inside City Limits?
No

9. Ever in US Armed Forces?
No

10. Marital Status at Time of Death
Never Married

11. Surviving Spouse's Name (If wife, give name prior to first marriage)

12. Decedent's Education
COLLEGE, BUT NO DEGREE

13. Decedent of Hispanic Origin
No

14. Decedent's Race
White

15. Father's Name
ALAN FRANCIS MCGOVERN SR

16. Mother's Name (prior to first marriage)
JANICE ELLEN STINSON

17a. Informant's Name
ALLISON MARIE MAURER

17b. Relationship to Decedent
Fiancee

17c. Mailing Address (street and number, city, state, zip code)
114 Berry Lane

**DISPOSITION**

18a. Place of Death
Hospital - Inpatient

18b. City or Town, State and Zip Code
CINCINNATI, OH 45229

18c. County of Death
HAMILTON

CHILDRENS HOSPITAL MEDICAL CENTER

Feasterville, PENNSYLVANIA 19053

19. Facility Name (if not institution, give street and number)

20. License Number (of licensee)
009390

21. Name and Complete Address of Funeral Facility
MCCALL FUNERAL HOME

22a. Method of Disposition
Cremation

22b. Date of Disposition
October 30, 2014

3800 READING RD
CINCINNATI, OH 45229

22c. Place of Disposition (Name of Cemetery, Crematory, or other place)
Cincinnati Cremation Co.

22d. Location (City/Town and State)
CINCINNATI, OH

**REGISTRAR**

23. Registrar's Signature
Camila Jones MD

24. Date Filed
SEP 26 2014

25a. Name of Person Issuing Burial Permit
JONES, CAMILLE

25b. Permit No.
.3101

25c. Date Burial Permit Issued
SEP 26 2014

**CERTIFIER**

26a. Certifier (Check only one)
[X] Certifying Physician
To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated.
[ ] Coroner
On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place and due to the cause(s) and manner stated.

26b. Time of Death
1433

26c. Date Pronounced Dead (Mo/Day/Year)
9/24/14

26d. Was case referred to coroner?
Yes

26e. Signature and Title of Certifier

26f. License Number
35.121415

26g. Date Signed
9/26/14

27. Name (First, First, Middle) and Address of Person who Completed Cause of Death
LAURA ANN KITZMILLER, 3333 Burnet Avenue CINCINNATI, OH 45229

**CAUSE OF DEATH**

28. Part I. Enter the disease, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

Approximate Interval Between Onset and Death

Immediate Cause (Final disease or condition resulting in death)
a. septic shock

Sequentially list conditions, if any, leading to immediate cause.
b. Due to (or as a consequence of)
fungal infection

Enter Underlying Cause (Disease or Injury that initiated events resulting in death)
c. Due to (or as a consequence of)
bone marrow transplant

d. Due to (or as a consequence of)
Wiskott-Aldrich

28. Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

29a. Was An Autopsy Performed?
[ ] Yes [ ] No

29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death?
[ ] Yes [ ] No [ ] Not Applicable

30. Did Tobacco Use Contribute to Death?
[ ] Yes [ ] Unknown
[X] No [ ] Probably

31. If Female, Pregnancy Status
[ ] Not pregnant within past year
[ ] Pregnant at time of death
[ ] Not pregnant, but pregnant within 42 days of death
[ ] Not pregnant, but pregnant 43 days to 1 year before death
[ ] Unknown if pregnant within the past year

32. Manner Of Death
[X] Natural [ ] Homicide
[ ] Accident [ ] Pending Investigation
[ ] Suicide [ ] Could not be determined

33a. Date of Injury (Mo/Day/Year)

33b. Time of Injury

33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area)

33d. Injury at Work?
[ ] Yes [ ] No

33e. Location of Injury (Street and Number or Rural Route Number, City or Town, State)

33f. Describe How Injury Occurred

33g. If Transportation Injury, Specify
[ ] Driver/Operator [ ] Pedestrian [ ] Passenger
[ ] Other

HEA 2734  Rev. 0107

I HEREBY CERTIFY THIS
DOCUMENT IS A, EXACT
COPY OF THE RECORD ON FILE WITH
THE OHIO DEPT. OF HEALTH.

SP 26 14 335162

# EXHIBIT "E"

# MetLife®

P O  BOX 30074
TAMPA  FL 33630-3074


MCGOVERN ALAN
114 BERRY LANE
FEASTERVILLE PA 19053


THE ATTACHED CHECK REPRESENTS A REFUND DUE TO A DECLINATION NOTICE.


SEP 3 0 2014

---

Detach stub before cashing

## MetLife®

P O  BOX 30074
TAMPA  FL 33630-3074

Metropolitan Life Insurance Company   DO-997/213

Check Number
**202046220**

| Type of Payment | REFUND~D | |
|---|---|---|
| 300 | | |
| OFFICE 56H | AGENCY 023 | 001427953 |

20500001

Pay to the Order of:

MCGOVERN, ALAN
114 BERRY LANE
FEASTERVILLE PA 19053

Not Valid Before
09/26/2014

Amount
Dollars    Cents

$****503*39

JPMorgan Chase Bank, N.A.
6040 Tarbell Road
Syracuse NY 13206

N Nebel
AUTHORIZED SIGNATURE

# EXHIBIT "F"

Reg. Dist. No.        31

Primary Reg. Dist. No.  3101

Registrar's No. 2014DO 2960

Ohio Department of Health
VITAL STATISTICS
CERTIFICATE OF DEATH
Type or print in permanent blue or black ink

State File No.  2014083065

**1.** Decedent's Legal Name (Include AKA's if any) (First, Middle, LAST, suffix)
ALAN FRANCIS MCGOVERN JR

**2.** Sex
Male

**3.** Date of Death (Mo/Day/Year)
September 24, 2014

**4.** Social Security Number

**5a.** Age (Years)  30

**5b.** Under 1 Year  Months / Days

**5c.** Under 1 day  Hours / Minutes

**6.** Date of Birth (Mo/Day/Year)
July 13, 1984

**7.** Birthplace (City and State or Foreign Country)
BRISTOL, PENNSYLVANIA

**8a.** Residence State
PENNSYLVANIA

**8b.** County
BUCKS

**8d.** City or Town
Feasterville

**8c.** Street and Number
114 Berry Lane

**8f.** Apt. No.

**8f.** Zipcode
19053

**8g.** Inside City Limits?
No

**9.** Ever in US Armed Forces?
No

**10.** Marital Status at Time of Death
Never Married

**11.** Surviving Spouse's Name (If wife, give name prior to first marriage)

**12.** Decedent's Education
COLLEGE, BUT NO DEGREE

**13.** Decedent of Hispanic Origin
No

**14.** Decedent's Race
White

**15.** Father's Name
ALAN FRANCIS MCGOVERN SR

**16.** Mother's Name (prior to first marriage)
JANICE ELLEN STINSON

**17a.** Informant's Name
ALLISON MARIE MAURER

**17b.** Relationship to Decedent
Fiancee

**17c.** Mailing Address (Street and Number, City and State, Zip Code)
114 Berry Lane
Feasterville, PENNSYLVANIA 19053

**18a.** Place of Death
Hospital - Inpatient

**18b.** Facility Name (If not Institution, give street & number)
CHILDREN'S HOSPITAL MEDICAL CENTER

**18c.** City or Town, State and Zip Code
CINCINNATI, OH 45229

**18d.** County of Death
HAMILTON

**19.** Method of Disposal / Signature / License of Embalmer

**20.** License Number (of licensee)
009380

**21.** Name and Complete Address of Funeral Facility
MCCALL FUNERAL HOME

**22a.** Method of Disposition
Cremation

**22b.** Date of Disposition
October 30, 2014

3800 READING RD
CINCINNATI, OH 45229

**22c.** Place of Disposition (Name of Cemetery, Crematory, or other place)
Cincinnati Cremation Co.

**22d.** Location (City/Town and State)
CINCINNATI, OH

**23.** Registrar's Signature
Camille Jones MD

**24.** Date Filed
SEP 2 6 2014

**25a.** Name of Person Issuing Burial Permit
JONES, CAMILLE

**25b.** Dist. No.
3101

**25c.** Date Burial Permit Issued
SEP 2 6 2014

**23a.** Certifier
(Check only one)

[X] Certifying Physician
On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

[ ] Coroner
On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

**23b.** Time of Death
1433

**23c.** Date Pronounced Dead (Mo/Day/Year)
9/24/14

**23d.** Was case referred to coroner?
Yes

**26.** Signature and Title of Certifier

**26f.** License number
35.121415

**26d.** Date Signed
9/26/14

**27.** Name (Last, First, Middle) and Address of Person who Completed Cause of Death
LAURA ANN KITZMILLER, 3333 Burnet Avenue CINCINNATI, OH 45229

**28. Part I.** Enter the disease, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

Immediate Cause
(Final disease or condition resulting in death)

a.  septic shock

Sequentially list conditions, if any, leading to immediate cause.

b.  Due to (or as consequence of)  fungal infection

c.  Due to (or as consequence of)  bone marrow transplant

d.  Due to (or as consequence of)  Wiskott-Aldrich

**Part II.** Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

**29a.** Was An Autopsy Performed?
[X] Yes  [ ] No

**29b.** Were Autopsy Findings Available Prior To Completion of Cause of Death?
[ ] Yes  [ ] No  [ ] Not Applicable

**30.** Did Tobacco Use Contribute to Death?
[ ] Yes      [ ] Unknown
[X] No       [ ] Probably

**31.** If Female, Pregnancy Status
[ ] Not pregnant within past year
[ ] Pregnant at time of death
[ ] Not pregnant, but pregnant within 42 days of death
[ ] Not pregnant, but pregnant 43 days to 1 year before death
[ ] Unknown if pregnant within the past year

**32.** Manner of Death
[X] Natural
[ ] Accident
[ ] Suicide
[ ] Homicide
[ ] Pending Investigation
[ ] Could not be determined

**33a.** Date of Injury (Mo/Day/Year)

**33b.** Time of Injury

**33c.** Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area)

**33d.** Injury at Work?
[ ] Yes  [ ] No

**33e.** Location of Injury (Street and Number or Rural Route Number, City or Town, State)

**33f.** Describe How Injury Occurred:

**33g.** If Transportation Injury, Specify:
[ ] Driver/Operator  [ ] Pedestrian  [ ] Passenger
[ ] Other:

HEA 2724  Rev. 01/07

I HEREBY CERTIFY THIS
DOCUMENT IS AN EXACT
COPY OF THE RECORD ON FILE WITH
THE OHIO DEPARTMENT OF HEALTH.

SP 26 14 035162

# EXHIBIT "G"



**DONALD PETRILLE, JR., ESQUIRE**
Register of Wills and Clerk of the Orphans' Court
Bucks County Administration Building
55 E. Court Street, Doylestown, PA 18901

# SHORT CERTIFICATE

Commonwealth of Pennsylvania   :
County of Bucks                 :   ss

     I, **DONALD PETRILLE, JR., ESQUIRE**, Register of Wills in and for the County of Bucks, in the Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on this **29th** of September, 2014, LETTERS TESTAMENTARY, on the Estate of **ALAN FRANCIS MCGOVERN JR, AKA ALAN MCGOVERN JR,** , deceased were granted to **ALLISON M. MAURER** having first been qualified well and truly to administer the same. And, I further certify that no revocation of said Letters appears of record in my office.

     Given under my hand and seal of office this **10th day of August, 2015.**

By:   Donald Petrille, Jr., Esquire
        Register of Wills

Date of Death: **September 24, 2014**
Social Security No.: **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**
File No.: **2014-02391**

**NOT VALID WITHOUT SIGNATURE AND IMPRESSED SEAL**

# Exhibit "H"

**MetLife®**

Metropolitan Life Insurance Company
Group Life Claims
P.O. Box 6100
Scranton, PA 18505
NOT FOR SERVICE OF LEGAL PROCESS

December 11, 2015

Musi, Malone & Daubenberger, LLP
Thomas A. Musi Jr., Attorney
21 West Third St.
Media, PA 19063

RE: Plan Participant: Alan F. McGovern (decedent)
    Plan Name & Group No.: Lowe's Companies / 0121189 (Basic Life & Optional Life
Insurance)
    Claim No.: 21511003175
    Your Client: Allison Maurer

Dear Attorney Musi:

We are writing in regard to the above-referenced claim for Group Life insurance benefits. Please
accept our sincere condolences at this time.

We have received your correspondence, but the insurance you have inquired about is not payable
for the following reason.

The Plan is an employee welfare benefit plan regulated by the Employee Retirement Income
Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461. MetLife, as claims
fiduciary, must administer claims in accordance with ERISA and the documents and instruments
governing the Plan.

This group policy ended on December 31, 2013 and it is our understanding that Lowe's Companies
moved the group life insurance plan to another carrier on January 1, 2014. The decedent was last
actively at work on February 15, 2014 and passed away on September 24, 2014, which was after
the group policy cancelled with MetLife. Therefore, benefits are not payable under the group
policy. You may wish to contact Lowe's Companies for further information.

Therefore, based on the record before MetLife, we must deny your client's claim.

Under ERISA, you have the right to appeal this decision **within sixty (60) days** after the receipt
of this letter. To do so, you must submit a written request for appeal to MetLife at P.O. Box
6100, Scranton, PA 18505. Please include in your appeal letter the reason(s) you believe the
claim was improperly denied, and submit any additional comments, documents, records or other
information relating to your claim that you deem appropriate to enable MetLife to give your

gli316.rev.0005

appeal proper consideration. Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim.

MetLife Group Life Claim Appeal Committee will carefully evaluate all the information and advise the claimant of its decision within sixty (60) days after the receipt of the appeal. If there are special circumstances requiring additional time to complete the review, we may take up to an additional sixty (60) days, but only after notifying the claimant of the special circumstances in writing. In the event the appeal is denied in whole or in part, the claimant has the right to bring a civil action under Section 502(a) of ERISA.

If you would like us to reconsider your client's claim, in support of your appeal, please provide us with any information that would demonstrate reason for appeal.

If you have any questions, please contact our office at 315-792-6843.

Sincerely,


Group Life Claim Examiner
Group Life Claims Operations

gli316.rev.0005

Exhibit "I"



THOMAS A. MUSI, JR.
WILLIAM E. MALONE, JR.
RICHARD C. DAUBENBERGER
STEVEN M. PACILLIO
C. CURTIS NORCINI
LUCAS A. CLARK, IV
CHRISTOPHER M. BROWN
DENNIS C. COYNE
RACHEL L. MYERS
ANDREW M. PATRICK

January 15, 2016

**VIA CERTIFIED MAIL R/R/R**
MetLife
P.O. Box 6100
Scranton, PA 18505

RE:     **Appeal**
        **Insured:  Alan F. McGovern (decedent)**
        **Claim No.: 2151003175**
        **Our Client:   Allison Maurer**

Dear MetLife:

I am writing in response to your December 11, 2015 correspondence.  A copy of said letter is attached as Exhibit "1".  In support of our reasoning as to why the claim should not have been denied, I re-submit with all referenced attachments therein the correspondence sent by this firm on behalf of Ms. Maurer on October 26, 2015 identified as Exhibit "2".

In Exhibit "1", MetLife alleges denial is appropriate because decedent's employer ended its group policy with MetLife on December 31, 2013, prior to the decedent's last day of work and date of death.  This position is irrelevant based upon the course of conduct engaged in by and between Ms. Maurer acting as Agent under Power of Attorney over Mr. McGovern and MetLife set forth in Exhibit "2".  The decedent and his agent contacted MetLife as prompted by the employer, MetLife's representative proceeded to enter into a contract and accepted consideration for said contracted life insurance policy with a death benefit of $449,000.00.  At no time prior to the acceptance of consideration was Mr. McGovern or Ms. Maurer advised of the group policy dynamics now being asserted by MetLife to deny the claim.  Ms. Maurer and Mr. McGovern paid the premium, the premium amount left Ms. Maurer's account, and as of that moment a contract existed that, unless paid, is breached.

Please consider this additionally a formal request for all records and/or reports relevant to this claim.  Our next application will be to the Pennsylvania Insurance Commission.

Thank you for your kind attention to the above.

Very truly yours,

Thomas A. Musi, Jr., Esquire

TAM/CMB/pjh
cc: Christopher M. Brown, Esquire
    Alison Maurer

**MUSI, MALONE & DAUBENBERGER, LLP**
**ATTORNEYS AT LAW**
**21 WEST THIRD STREET, MEDIA, PA 19063 · P: 610.891.8806 · F: 610.891.8807**
**1735 MARKET STREET, SUITE A-534, PHILADELPHIA, PA 19103 · P: 215.940.8806 · F: 215-940-2837**
**310 NORTH HIGH STREET, WEST CHESTER, PA 19380 · P: 610.692.8806 · F: 610-692-3515**
**WWW.MMDLAWFIRM.COM**

# EXHIBIT "1"

**MetLife**

Metropolitan Life Insurance Company
Group Life Claims
P.O. Box 6100
Scranton, PA 18505
NOT FOR SERVICE OF LEGAL PROCESS

December 11, 2015

Musi, Malone & Daubenberger, LLP
Thomas A. Musi Jr., Attorney
21 West Third St.
Media, PA  19063

RE:  Plan Participant: Alan F. McGovern (decedent)
        Plan Name & Group No.: Lowe's Companies / 0121189 (Basic Life & Optional Life
Insurance)
        Claim No.: 21511003175
        Your Client:  Allison Maurer

Dear Attorney Musi:

We are writing in regard to the above-referenced claim for Group Life insurance benefits.  Please
accept our sincere condolences at this time.

We have received your correspondence, but the insurance you have inquired about is not payable
for the following reason.

The Plan is an employee welfare benefit plan regulated by the Employee Retirement Income
Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461.  MetLife, as claims
fiduciary, must administer claims in accordance with ERISA and the documents and instruments
governing the Plan.

This group policy ended on December 31, 2013 and it is our understanding that Lowe's Companies
moved the group life insurance plan to another carrier on January 1, 2014.  The decedent was last
actively at work on February 15, 2014 and passed away on September 24, 2014, which was after
the group policy cancelled with MetLife.  Therefore, benefits are not payable under the group
policy. You may wish to contact Lowe's Companies for further information.

Therefore, based on the record before MetLife, we must deny your client's claim.

Under ERISA, you have the right to appeal this decision **within sixty (60) days** after the receipt
of this letter.  To do so, you must submit a written request for appeal to MetLife at P.O. Box
6100, Scranton, PA 18505.  Please include in your appeal letter the reason(s) you believe the
claim was improperly denied, and submit any additional comments, documents, records or other
information relating to your claim that you deem appropriate to enable MetLife to give your

gli316.rev.0005

appeal proper consideration.  Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim.

MetLife Group Life Claim Appeal Committee will carefully evaluate all the information and advise the claimant of its decision within sixty (60) days after the receipt of the appeal.  If there are special circumstances requiring additional time to complete the review, we may take up to an additional sixty (60) days, but only after notifying the claimant of the special circumstances in writing.  In the event the appeal is denied in whole or in part, the claimant has the right to bring a civil action under Section 502(a) of ERISA.

If you would like us to reconsider your client's claim, in support of your appeal, please provide us with any information that would demonstrate reason for appeal.

If you have any questions, please contact our office at 315-792-6843.

Sincerely,


Group Life Claim Examiner
Group Life Claims Operations

gli316.rev.0005

# EXHIBIT "2"



THOMAS A. MUSI, JR.
WILLIAM E. MALONE, JR.
RICHARD C. DAUBENBERGER
STEVEN M. PACILLIO
C. CURTIS NORCINI
LUCAS A. CLARK, IV
CHRISTOPHER M. BROWN
DENNIS C. COYNE
RACHEL L. MYERS
ANDREW M. PATRICK

October 26, 2015

*VIA FIRST CLASS MAIL*

Metropolitan Life Insurance Company    MetLife
200 Park Ave.                          P.O. Box 20074
New York, NY 10166                     Tampa, FL 33630-3074

MetLife
P.O. Box 354 00795
Warwick, RI 02887-0354

    RE: **Life Insurance of Alan F. McGovern, Deceased**
       **D.O.D. Sept. 24, 2014**
       **MetLife Contract/Policy Number 214102327**

Dear MetLife:

  This office represents Allison Maurer, individually and as Executrix of the Estate of Alan F. McGovern, deceased ("Decedent"). Enclosed is a copy of Mr. McGovern's death certificate for your reference. We are requesting that the death benefit of the above-referenced contract/policy number be remitted to Allison Maurer whom we understand to be the beneficiary of said policy based upon the following:

  1. Decedent was placed on personal leave of absence from his job at Lowe's ("Employer") effective February 25, 2014. A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "A."

  2. By letter dated July 25, 2014, Employer advised Decedent that his benefits would be terminated effective August 14, 2014 and further directed Decedent to continue or convert his coverage of Basic Life, Supplemental Life Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting MetLife. A true and correct copy of said letter is attached hereto and incorporated herein marked as Exhibit "B."

  3. On or about August 28, 2014, MetLife Financial Services Representative Kevin Crowley ("MetLife Rep") met with the Decedent's agent under power of attorney/fiancé, Allison Maurer ("Agent") and provided Agent the necessary paperwork and explained how to complete said paperwork.

  4. On or about September 4, 2014, MetLife Rep contacted Agent via text-messaging to determine if Agent had any questions regarding the paperwork to which Agent responded she

**MUSI, MALONE & DAUBENBERGER, LLP**
ATTORNEYS AT LAW
**21 WEST THIRD STREET, MEDIA, PA 19063 · P: 610.891.8806 · F: 610.891.8807**
1735 MARKET STREET, SUITE A-534, PHILADELPHIA, PA 19103 · P: 215.940.8906 · F: 215-940-2937
310 NORTH HIGH STREET, WEST CHESTER, PA 19380 · P: 610.692.8806 · F: 610-692-3515
WWW.MMDLAWFIRM.COM

intended to review the paperwork with Decedent to discuss the amount of the policy and the payment amount.

5.      On or about September 5, 2014, via text message Agent informed MetLife Rep that she had completed the paperwork and informed MetLife Rep that the policy was for $399,000.00 Supplemental Term Life and $50,000.00 of Life insurance, to which MetLife Rep requested the paperwork be sent to his personal residence for review before submission to ensure that everything was filled out correctly.

6.      On or about September 12, 2014, via text message MetLife Rep asked Agent whether the paperwork was mailed yet, also stating "just want to make sure there are no deadlines to get the coverage," to which Agent responded the paperwork should be in the mail.

7.      On or about September 14, 2014, via text message MetLife Rep indicated to Agent that he was running the numbers for Decedent for $449,000.00 and needed Decedent's date of birth again.  Shortly thereafter MetLife Rep emailed the payment amount to Agent and Agent told MetLife Rep she needed to see if she could afford a lump sum or if she was only able to afford monthly payments of the premium.

8.      On or about September 15, 2014, via text message MetLife Rep confirmed he received the application in the mail but he needed the following: "Couple things, Going to need a copy of the POA (email me if you can).  Also need to put something down for his net worth (just something more than 0).  I was going to put you down as the beneficiary -- is that correct?  If so send me your DOB.  Last thing, I need to get my hands of the letter Lowes sent to Alan about the life insurance offer.  I tried to get my hands on this, but was told only get from Lowes.  Sorry for the long email..."

Agent replied via text message:

"I might need your assistance to figure out his net worth since almost everything is in my name but a car we share and a truck he has been working that really doesn't have a cash value.  He isn't working but gets a check every month for long term and I Wil be filing for ss this week.  And any saving is in both out names that I will be using to pay for the policy.

I have the original with me so, I will see if I can get it sent to you some how.  Does it have to be a scanned document?

Yes I am the beneficiary.  Allison Marie Maurer My DOB is 7 6 1982

I can forward you the email.  That was sent to me from the area HR about the benefits.  Would that work?"

To which MetLife Rep replied -- "Ok.. for net worth I'll put down 10k (need to put something down).  For the POA, if easier to fax then send to 610 832 3791.  Not sure about the email, but send it to me and I'll see if they will take."

9.      On  or about September 16, 2014, MetLife Rep via text message asked Agent. "Do you think emailing or faxing POA?  Just want to make sure I get... I was going to send in Alan's Application today.  Thanks".

10.      Agent responded by informing MetLife Rep that she was going to talk to Decedent's Social Worker today to assist her with getting the POA sent over to him that day. Agent also expressed her concern that she felt his net worth was rather high at $10k and more likely Decedent was possibly even negative.

11.      MetLife Rep stated "It's OK -- not going to ask for any proof of this..." Agent responded that this was his [MetLife Rep's] world so she trusts him with what needs to be filled out involving the net worth on the application.

12.      MetLife Rep later that day via text indicated that he was "Submitting everything now, any chance in forward me the email from HR?" Agent was able to forward the email within approximately 15 minutes and asked MetLife Rep if there was anything else that was needed.

13.      MetLife Rep replied "The only thing I can think of is the separation letter from MetLife thru Lowes – trying to get around with the email.  If you have a minute, give me a call."

14.      Thereafter MetLife Rep and Agent discussed taking a direct payment out of their bank account to ensure that they have coverage retroactive, said payment was withdrawn by MetLife and applied to contract 214102327.  A true and correct copy the confirmation letter from MetLife dated September 19, 2014 is attached hereto and incorporated herein marked as Exhibit "C."

15.      Payment cleared out of Agent's personal checking account on September 19, 2014.

16.      Decedent died on September 24, 2014 with the policy in effect.  A true and correct copy of the death certificate is attached hereto and incorporated herein marked as Exhibit "D."

17.      By letter dated September 30, 2014, six (6) days after decedent's death and eleven (11) days after accepting the premium tendered by Agent, MetLife cancelled the policy and attached Check Number 202046220 representing "a refund due to a declination notice".  Said check was not accepted by Agent.  A true and correct copy of said check is attached hereto and incorporated herein marked as Exhibit "E."  A copy of decedent's death certificate and short certificate are also attached as Exhibits "F" and "G", respectively.

The submission of the completed application and the subsequent clearing of payment to MetLife for the premium constitutes an offer, acceptance and consideration giving rise to a contract between Decedent and MetLife.  Thus we are requesting the death benefit of $449,000.00 of the above-referenced policy be remitted to the designated beneficiary or, in the absence thereof, to the Estate of Alan McGovern.  Kindly do so within the next twenty (20) days or we will seek compulsion through the courts plus all additional relief as the court deems fit.

Thank you for your kind attention to the above.

Very truly yours,

Thomas A. Musi, Jr.

TAM/CMB/enf
Enclosures
cc:  Christopher M. Brown

EXHIBIT "A"



March 01, 2014

Location: 1980
Hire Date: 03-17-2008
Position: Account Exec ProServices
Emp Class: Full/Reg
Sales ID: 001264518

Alan McGovern
114 Barry Lane

Trevose, PA 19053

Dear Alan,

You have been placed on a personal leave of absence from your job at Lowe's effective 02-15-2014. During the period of your approved leave, you must maintain regular contact with your supervisor, at least bi-weekly. Failure to maintain contact or to return at the end of the approved leave may result in termination of employment. In certain situations, additional leave may be requested. If you request an extension of an approved leave, you must provide appropriate justification for the leave request; however, the normal maximum period of leave is 365 days, absent an accommodation for a qualifying condition. Besides requesting an extension of your leave, other accommodations may include (but are not limited to) modifications to assist you to perform your job duties or reassignment to an open and available position. If you have a qualifying condition, you may request an ADA accommodation at any time during your leave of absence by contacting HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. At the end of your approved leave of absence, Lowe's will consider you for return to work however, Lowe's does not guarantee that it will be able to re-employ you in the position you held prior to your leave. You may apply for any open position for which you are qualified, either at the location in which you previously worked or at another Lowe's location.

Your insured benefits will automatically be continued during any period of leave unless you elect otherwise. The maximum period you may continue Lowe's group insurance benefits during any absence is 180 days. You will be required to pay your portion of all group insurance premiums (health, dental, vision, life, disability and Health FSA), if any, that you continue during your leave of absence. You will be billed for each bi-weekly pay period at your home address for your portion of the group insurance premiums by Lowe's vendor Key Benefit Administrators (KBA). If payment is not made timely to KBA, your group insurance benefits will be cancelled. You will be notified in writing in advance of the termination of benefits. Please note that you will not be eligible for continuation of coverage through COBRA if your benefits are terminated for non-payment of premiums. If you do not receive a statement from KBA within four weeks, call KBA at 1-888-309-8232. If you are participating in the auto/home insurance or long-term care insurance plan options, contact MetLife at 1-800-438-6388 to arrange for payment of your premiums while on leave. If you have questions concerning continuation of benefits while on leave, contact your Location HR Manager/Coach, OSC Departmental Manager or Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535.

If you are a part time employee enrolled in the Limited Benefit Health Plan, you are still responsible for the premium payments if you want your coverage to remain in force. For all options you still need to pay premiums directly to Allstate Workplace Division to avoid a lapse in coverage. You can contact Allstate Workplace Division at 1-866-510-5859.

If you do not wish to continue insured benefits while on leave of absence, complete the cancellation request attached, and return it to the address noted within 31 days of the start of your leave. Please note that by cancelling any one of the group insurance options, your enrollment, if any, in the life insurance, personal accident insurance, long-term disability, pre-paid legal, auto/home insurance, and long-term care insurance plan options will also end. You will have the option to re-enroll in these plan options if you return to active

status from leave within 365 days of the start of your leave. However, please note that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

Your participation in the dependent care flexible spending account, if any, will be automatically suspended as of the start of your leave of absence. Upon return to active status you may restart your dependent care FSA by contacting Wage Works, the plan administrator at 1-877-924-3967, or by visiting myloweslife.com.

While on leave, your employee discount card will be in effect for a maximum of 90 days.

A leave of absence of any kind will not be counted towards bonus eligibility under any of the company's incentive programs. Incentives and bonus payments are prorated for the number of days in active status while in a bonus eligible position. Please consult the applicable incentive program document for further information.

For more comprehensive information on benefits while on leave, please refer to the summary plan description located in "Foundation for Success" available on myloweslife.com or review Lowe's Personal Leave policy. If you have any questions about your benefits, contact Lowe's HR Shared Services at 1-888HRINFO5 or 1-336-658-3535. If you have any questions about your return from leave, contact your HR Manager/Coach or CSC Departmental Manager.

Sincerely,

Lowe's Group Benefits Department

---

COMPLETE AND MAIL THIS SECTION ONLY IF YOU WISH TO CANCEL INSURED BENEFIT COVERAGES.

I do not wish to continue any insurance benefits beyond my last day worked. I understand that I will have the option of re-enrolling in these plan options if I return to active status from leave within 365 days of the start of my leave and I reapply within 31 days of returning to work. I further understand that re-enrollment in the life insurance, long-term disability, and long-term care insurance plan options are subject to approval by the applicable plan underwriter.

To cancel benefits, the postmark date must be within 31 days of the start of the leave. The effective date of cancellation will be the postmark date of the correspondence containing the cancellation form.

| Printed Name | | Sales ID Number |
| Location Number | Date | Signature |

Return To:   Lowe's HR Shared Services, Mail Code PRN2
             1605 Curtis Bridge Rd.
             Wilkesboro, NC 28697                           F1-Personal

---

Note:   Employees who have not returned to work after 365 days of absence are subject to termination absent an accommodation for a qualifying condition.

# EXHIBIT "B"



July 25, 2014

Location:    1980

Alan Francis McGovern
114 Berry Lane
Trevose, PA 19053

Dear Alan,

## WARNING LETTER

The maximum duration of Lowe's benefits continuation during an approved absence is 180 days which is counted from your first day of absence. Your benefits will be terminated effective 08/14/2014 unless you return to work prior to this date.

After the exhaustion of the 180 day period, you can continue your Group Medical, Dental, and Vision Options coverage, and participation in the Health Flexible Spending Account through COBRA. You will receive a COBRA packet in the mail at your home address or you can contact Key Benefit Administrators at 888-309-3232.

You can also continue or convert your coverage under the Basic Life, Supplemental Life Dependent Life, Personal Accident, and Long Term Care Plan Options by contacting Metlife at 800-438-6388.

If you return from a leave of absence after 180 days, you will not be able to enroll for benefits until the next annual enrollment period, with such enrollment being effective January 1 of the next following plan year.

Please direct questions regarding this notice to your location's HR Manager/Coach or CSC Representative. You may also call HR Shared Services at 1-888-HRINFO5 (474-6365).

Sincerely,
Lowe's Benefits Department

# EXHIBIT "C"

Metropolitan Life Insurance Company
P.O. Box 354     00795
Warwick, RI 02887-0354



September 19, 2014

ALAN F MCGOVERN
114 BERRY LANE
FEASTERVILLE, PA 19053

RE: Electronic Payment (EP) Number 50001507604

Special Draft

We drafted $503.39 on Sept 19, 2014 and applied this amount to the contract(s) below:

| Legal Company Name | Contract/Policy Number | Payment Type | Amount |
|---|---|---|---|
| Metropolitan Life Insurance Company | 214102327 | INITIAL PREMIUM | $503.39 |

If your address has changed, please complete the "Change of Address" section on the lower portion of this letter and return it to the above address.

If you have any questions about the agreement, please contact your representative or call our automated directory at 1-800-638-5433 Monday through Friday between 8 a.m. and 6 p.m., ET.

Sincerely,

Koshier Miller

Koshier Miller
Remittance Reconciliation Unit

If you intend to close your bank account, please leave enough funds to cover payment for one month and inform us so the appropriate changes can be made to your account.

- - - - Detach - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Detach - - - -

## Change of Address

Please print your new address below and return this portion to the address above.
EP Number: 50001507604

ALAN F MCGOVERN
Bank Account Owner's Name

_____          _____          _____     _____
Street                                          City                                  State            Zip code

Note: Changes to bank information requires a new EP Account Agreement form.

# EXHIBIT "D"

Reg. Dist. No.      31
Primary Reg. Dist. No. 3101

Registrar's No. 201400 2960

**Ohio Department of Health**
**VITAL STATISTICS**
**CERTIFICATE OF DEATH**
Type or print in permanent blue or black ink

State File No. 2014083065

**1.** Decedent's Legal Name (Include AKA's if any) (First, Middle, LAST, suffix)
ALAN FRANCIS MCGOVERN JR

**2.** Sex: Male

**3.** Date of Death (Mo/Day/Year): September 24, 2014

**DECEDENT**

**4.** Social Security Number:

**5a.** Age (Years): 30  **5b.** Under 1 Year Months/Days  **5c.** Under 1 day Hours/Minutes

**6.** Date of Birth (Mo/Day/Year): July 13, 1984

**7.** Birthplace (City and State or Foreign Country): BRISTOL, PENNSYLVANIA

**8a.** Residence State: PENNSYLVANIA

**8b.** County: BUCKS

**8c.** City or Town: Feasterville

**8d.** Street and Number: 114 Berry Lane

**8e.** Apt. No.

**8f.** Zipcode: 19053

**8g.** Inside City Limits? No

**9.** Ever in US Armed Forces? No

**10.** Marital Status at Time of Death: Never Married

**11.** Surviving Spouse's Name (If wife, give maiden prior to first marriage)

**12.** Decedent's Education: COLLEGE, BUT NO DEGREE

**13.** Decedent of Hispanic Origin: No

**14.** Decedent's Race: White

**15.** Father's Name: ALAN FRANCIS MCGOVERN SR

**16.** Mother's Name (prior to first marriage): JANICE ELLEN STINSON

**17a.** Informant's Name: ALLISON MARIE MAURER

**17b.** Relationship to Decedent: Fiancee

**17c.** Mailing Address: (Street and Number, City, State, Zip Code) 114 Berry Lane    Feasterville, PENNSYLVANIA 19053

**18a.** Place of Death: Hospital - Inpatient

**18b.** Facility Name (If not institution, give street & number): CHILDREN'S HOSPITAL MEDICAL CENTER

**18c.** City or Town, State and Zip Code: CINCINNATI, OH 45229

**18d.** County of Death: HAMILTON

**REGISTRAR / DISPOSITION**

**19.** Signature of Funeral Service Licensee or Other Agent

**20.** License Number (of Licensee): 009390

**21.** Name and Complete Address of Funeral Facility: MCCALL FUNERAL HOME

**22a.** Method of Disposition: Cremation

**22b.** Date of Disposition: October 30, 2014

3800 READING RD

**22c.** Place of Disposition (Name of Cemetery, Crematory, or other place): Cincinnati Cremation Co.

**22d.** Location (City/Town and State): CINCINNATI, OH

CINCINNATI, OH 45229

**23.** Registrar's Signature: Camille Jones MD

**24.** Date Filed: SEP 26 2014

**25a.** Name of Person Issuing Burial Permit: JONES, CAMILLE

**25b.** Permit No. 3101

**25c.** Date Burial Permit Issued: SEP 26 2014

**CERTIFIER**

**26a.** Certifier (Check only one):
[X] Certifying Physician—To the best of my knowledge, death occurred due to the time, date, and place; and due to the cause(s) and manner stated.
[ ] Coroner—On the basis of examination and/or investigation, in my opinion, death occurred at the time, date and place and due to the cause(s) and manner stated.

**26b.** Time of Death: 1433

**26c.** Date Pronounced Dead (Mo/Day/Year): 9/24/14

**26d.** Was case referred to coroner? Yes

**26e.** Signature and Title of Certifier:

**26f.** License Number: 35.121415

**26g.** Date Signed: 9/26/14

**27.** Name (First, Middle) and Address of Person who Completed Cause of Death: LAURA ANN KITZMILLER, 3333 Burnet Avenue CINCINNATI, OH 45229

**CAUSE OF DEATH**

**28.** Part I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

Approximate Interval Between Onset and Death

Immediate Cause (Final disease or condition resulting in death)
a. septic shock

Sequentially list conditions, if any, leading to immediate cause
b. Due to (or as a consequence of): fungal infection

c. Due to (or as a consequence of): bone marrow transplant

Enter Underlying Cause (Disease or injury that initiated events resulting in death)
d. Due to (or as a consequence of): Wiskott-Aldrich

Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

**29a.** Was an Autopsy Performed? [ ] Yes [X] No

**29b.** Were Autopsy Findings Available Prior To Completion Of Cause of Death? [ ] Yes [ ] No [ ] Not Applicable

**30.** Did Tobacco Use Contribute to Death?
[ ] Yes      [ ] Unknown
[X] No       [ ] Probably

**31.** If Female, Pregnancy Status
[ ] Not pregnant within past year
[ ] Pregnant at time of death
[ ] Not pregnant, but pregnant within 42 days of death
[ ] Not pregnant, but pregnant 43 days to 1 year before death
[ ] Unknown if pregnant within the past year

**32.** Manner of Death:
[X] Natural
[ ] Accident
[ ] Suicide
[ ] Homicide
[ ] Pending Investigation
[ ] Could not be determined

**33a.** Date of Injury (Mo/Day/Year)

**33b.** Time of Injury

**33c.** Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area)

**33d.** Injury at Work? [ ] Yes [ ] No

**33e.** Location of Injury (Street and Number or Rural Route Number, City or Town, State)

**33f.** Describe How Injury Occurred

**33g.** If Transportation Injury, Specify:
[ ] Driver/Operator [ ] Pedestrian [ ] Passenger
[ ] Other

HEA 2724  Rev. 01/07

I HEREBY CERTIFY THIS DOCUMENT IS AN EXACT COPY OF THE RECORD ON FILE WITH THE OHIO DEPARTMENT OF HEALTH.

SP 26 14 005162

# EXHIBIT "E"

**MetLife®**

P O   BOX 30074
TAMPA   FL 33630-3074


MCGOVERN ALAN
114 BERRY LANE
FEASTERVILLE PA 19053


THE ATTACHED CHECK REPRESENTS A REFUND DUE TO A DECLINATION NOTICE.


SEP 3 0 2014


---

XON128.SCHE (11/05)                          Detach stub before cashing

**MetLife®**        Metropolitan Life Insurance Company        EO-937/213                      619
P O  BOX 30074                                                                      Check Number
TAMPA  FL 33630-3074        Type of Payment          REFUND-D                       202046220
                           300
                           OFFICE    AGENCY          0014279551
                           58H       023
Pay to the Order of                                                                 Not Valid Before
                                      20500001                                      09/26/2014
MCGOVERN, ALAN
114 BERRY LANE                                                                      Amount
FEASTERVILLE PA 19053                                                         Dollars      Cents
                                                                             $****503 *39

JPMorgan Chase Bank, N.A.
6040 Tarbell Road
Syracuse NY 13206                                                            AUTHORIZED SIGNATURE

EXHIBIT "F"

Reg. Dist. No.   31
Primary Reg. Dist. No. 3101

Ohio Department of Health
VITAL STATISTICS
CERTIFICATE OF DEATH
Type or print in permanent blue or black ink

State File No.  2014083065

Registrar's No. 201400 2960

| 1. Decedent's Legal Name (include AKA's if any) (First, Middle, Last, suffix) | | 2. Sex | 3. Date of Death (Mo/Day/Year) |
|---|---|---|---|
| ALAN FRANCIS MCGOVERN JR | | Male | September 24, 2014 |

| 4. Social Security Number | 5a. Age (Years) | 5b. Under 1 Year Months Days | 5c. Under 1 day Hours Minutes | 6. Date of Birth (Mo/Day/Year) | 7. Birthplace (City and State or Foreign Country) |
|---|---|---|---|---|---|
| | 30 | | | July 13, 1984 | BRISTOL, PENNSYLVANIA |

| 8a. Residence State | 8b. County | 8c. City or Town |
|---|---|---|
| PENNSYLVANIA | BUCKS | Feasterville |

| 8d. Street and Number | 8e. Apt. No. | 8f. Zipcode | 8g. Inside City Limits? |
|---|---|---|---|
| 114 Berry Lane | | 19053 | No |

| 9. Ever in US Armed Forces? | 10. Marital Status at Time of Death | 11. Surviving Spouse's Name (if wife, give name prior to first marriage) |
|---|---|---|
| No | Never Married | |

| 12. Decedent's Education | 13. Decedent of Hispanic Origin | 14. Decedent's Race |
|---|---|---|
| COLLEGE, BUT NO DEGREE | No | White |

| 15. Father's Name | | 16. Mother's Name (prior to first marriage) | |
|---|---|---|---|
| ALAN FRANCIS MCGOVERN SR | | JANICE ELLEN STINSON | |

| 17a. Informant's Name | 17b. Relationship to Decedent | 17c. Mailing Address (Street and Number, City, State, Zip Code) |
|---|---|---|
| ALLISON MARIE MAURER | Fiancee | 114 Berry Lane Feasterville, PENNSYLVANIA 19053 |

| 18a. Place of Death | |
|---|---|
| Hospital - Inpatient | |

| 18b. Facility Name (if not institution, give street and number) | 18c. City or Town, State and Zip Code | 18d. County of Death |
|---|---|---|
| CHILDREN'S HOSPITAL MEDICAL CENTER | CINCINNATI, OH 45229 | HAMILTON |

| 19. Signature of Funeral Service Licensee or Other Agent | 20. License Number (of licensee) | 21. Name and Complete Address of Funeral Facility |
|---|---|---|
| | 009390 | MCCALL FUNERAL HOME |

| 22a. Method of Disposition | 22b. Date of Disposition | 3800 READING RD |
|---|---|---|
| Cremation | October 30, 2014 | CINCINNATI, OH 46229 |

| 22c. Place of Disposition (Name of Cemetery, Crematory, or other place) | 22d. Location (City/Town and State) | |
|---|---|---|
| Cincinnati Cremation Co. | CINCINNATI, OH | |

| 23. Registrar's Signature | 24. Date Filed |
|---|---|
| Camille Jones MD | SEP 2 6 2014 |

| 25a. Name of Person Issuing Burial Permit | 25b. District No. | 25c. Date Burial Permit Issued |
|---|---|---|
| JONES, CAMILLE | 3101 | SEP 2 6 2014 |

| 26a. Certifier (Check only one) | [X] Certifying Physician To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated. |
|---|---|
| | [ ] Coroner On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place and due to the cause(s) and manner stated. |

| 26b. Time of Death | 26c. Date Pronounced Dead (Mo/Day/Year) | 26d. Was case referred to coroner? |
|---|---|---|
| 1433 | 9/24/14 | Yes |

| 26e. Signature of Certifier | 26f. License Number | 26g. Date Signed |
|---|---|---|
| | 35.121415 | 9/26/14 |

27. Name (Last, First, Middle) and Address of Person Who Completed Cause of Death
LAURA ANN KITZMILLER, 3333 Burnet Avenue CINCINNATI, OH 45229

28. Part I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| Immediate Cause (Final disease or condition resulting in death) | a. Septic shock | |
| Sequentially list conditions, if any, leading to immediate cause. | b. Due to (or as consequence of) fungal infection | |
| Enter Underlying Cause (Disease or injury that initiated events resulting in death) | c. Due to (or as consequence of) bone marrow transplant | |
| | d. Due to (or as consequence of) Wiskott-Aldrich | |

| Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 29a. Was An Autopsy Performed? [ ] Yes [ ] No | 29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death? [ ] Yes [ ] No [ ] Not Applicable |
|---|---|---|

| 30. Did Tobacco Use Contribute to Death? | 31. If Female, Pregnancy Status | 32. Manner of Death |
|---|---|---|
| [ ] Yes  [ ] Unknown | [ ] Not pregnant within past year | [X] Natural  [ ] Homicide |
| [X] No  [ ] Probably | [ ] Pregnant at time of death | [ ] Accident  [ ] Pending Investigation |
| | [ ] Not pregnant, but pregnant within 42 days of death | [ ] Suicide  [ ] Could not be determined |
| | [ ] Not pregnant, but pregnant 43 days to 1 year before death | |
| | [ ] Unknown if pregnant within the past year | |

| 33a. Date of Injury (Mo/Day/Year) | 33b. Time of Injury | 33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area) | 33d. Injury at Work? [ ] Yes [ ] No |
|---|---|---|---|

33e. Location of Injury (Street and Number and Rural Route Number, City and State)

| 33f. Describe How Injury Occurred: | 33g. If Transportation Injury, Specify: [ ] Driver/Operator [ ] Pedestrian [ ] Passenger [ ] Other |
|---|---|

HEA 2724  (Rev. 6/07)

I HEREBY CERTIFY THIS
DOCUMENT IS AN EXACT
COPY OF THE RECORD ON FILE WITH
THE OHIO DEPARTMENT OF HEALTH.

SP 2614 035162

# EXHIBIT "G"



**DONALD PETRILLE, JR., ESQUIRE**
Register of Wills and Clerk of the Orphans' Court
Bucks County Administration Building
55 E. Court Street, Doylestown, PA 18901

## SHORT CERTIFICATE

Commonwealth of Pennsylvania  :
County of Bucks           :  ss

       I, DONALD PETRILLE, JR., ESQUIRE, Register of Wills in and for the County

of Bucks, in the Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on this 29th

of September, 2014, LETTERS TESTAMENTARY, on the Estate of ALAN FRANCIS

MCGOVERN JR; AKA ALAN MCGOVERN JR,   ,deceased were granted to ALLISON

M. MAURER  having first been qualified well and truly to administer the same. And, I

further certify that no revocation of said Letters appears of record in my office.

       Given under my hand and seal of office this **10th day of August, 2015.**

By:     Donald Petrille, Jr., Esquire
         Register of Wills

Date of Death:  **September 24, 2014**
Social Security No.: ▮▮▮▮▮▮
File No.: **2014-02391**

**NOT VALID WITHOUT SIGNATURE AND IMPRESSED SEAL**

# Exhibit "J"

**MetLife**

Metropolitan Life Insurance Company
Group Life Claims
P.O. Box 6100
Scranton, PA 18505

January 25, 2016

Thomas Musi, Jr.
Attorney at Law
21 West Third Street
Media, PA 19063

Re: Plan Participant: Alan McGovern
    Plan & No.: Lowes Companies, Inc.  / 109702
    Claim No.: 21511003175
    Your Client: Allison Maurer

Dear Ms. Musi:

We are writing in regard to the referenced claim for group life insurance benefits.

This is to advise you that we have received your client's claim.

Due to special circumstances, it will be necessary for us to further evaluate this claim.  Therefore, completion will be delayed for a short period of time.

When we have made a decision, we will send you further notification.

If you have any questions, please contact our office at 800-638-6420.

Sincerely,

Group Life Claims Operations

gli182.rev.0006

# Exhibit "K"

**MetLife**

Metropolitan Life Insurance Company
Group Life Claims
P.O. Box 6100
Scranton, PA 18505

**Group Life Claims** Operations
Metropolitan Life Insurance Company

March 23, 2016

Insured Alan McGovern
Group Number **121189**
Claim No **21511003175**

Musi, Malone & Daubenberger, LLP
Attn: Thomas A. Musi Jr.
21 West Third Street
Media, PA   19063

## Dear Mr. Musi,

### Why we're contacting you

We are writing in regard to the above-referenced claim for Group Life insurance benefits.

### What you need to know

Our office is in receipt of your appeal on behalf of your client Allison Maurer. Please be advised that this concern is related to an individual policy and not group life benefits therefore, our office has forwarded your communications to that office for review.

### What you need to do

We have provided the correct office with your correspondence and they will be responding directly to you. For any additional questions or concerns please contact MetLife (401) 827-3020 at P.O. Box 354 Warwick, RI   02887-0354.

### We're here to help

If you have any questions, please contact our office at 800-638-6420.

Sincerely,

Group Life Claims

gli129.rev.0007